STRONG and GORDON, Chiefs of the Seneca Nation of Indians, *vs.* WATERMAN.

The indians in this state have an unquestionable right to the use, possession and occupancy of the lands of their respective reservations, which they have not voluntarily ceded to the state, nor granted to individuals by its permission. And the ultimate fee of such reservations is vested in the state, or in its grantees, subject to such right of use and occupancy, by the indians, until they shall voluntarily relinquish the same.

The right of the Seneca nation of indians, to the use and possession of the Cattaraugus reservation, is in all the individuals composing the nation, residing on such reservation, in their collective capacity; and they having no corporate name, no provision is made by law for bringing an ejectment suit to recover the possession of such lands for their benefit.

Nor can such indians sustain an action at law, in the name of their tribe, to recover the damages sustained by them, by reason of trespasses committed upon their reservations, or to recover a compensation for the use of their lands which have been intruded upon by others without authority. But a bill may be filed by one or more of them, in behalf of themselves and the other indians interested, to protect their rights and to obtain compensation for the damages sustained by the numerous persons composing the nation.

Where an individual, not belonging to the Seneca nation of indians, had intruded himself into the possession of lands belonging to the Cattaraugus reservation, without the consent of the nation, or of its chiefs, and was in the habit of cutting wood and timber thereon, the court of chancery, upon a bill filed by two of the

Strong *v.* Waterman.

chiefs, in behalf of themselves and others, granted an injunction restraining the defendant from committing waste or trespass on such lands, and from interfering with the possession of the indians residing on the reservation.

THIS was an application to dissolve an injunction granted by the vice chancellor of the eighth circuit, restraining the defendant from committing trespasses and waste upon the indian lands of the Cattaraugus reservation, or interfering with the possession of the indians residing on such reservation. The bill was filed by the complainants, who were two chiefs of the Seneca nation of indians, and who had been appointed by the general council of chiefs for that purpose, in behalf of themselves and the other individuals of the Seneca nation, residing on their several reservations. And the bill, after setting forth the original title of the Seneca nation of indians to the lands of the reservations, not only by occupancy but also by the recognition of their rights by the state, alleged that the said nation of indians, and the people thereof residing on their reservations, had, under the law of the state of New-York and the treaties with the United States, the sole and exclusive right to the possession, use and occupancy of their reservations, until they should be voluntarily surrendered up or relinquished by the nation, in the manner provided by law. It also set out the immemorial custom of the nation, to permit individuals, and heads of families, belonging to the nation, and residing upon the different reservations, to appropriate specific portions of the lands of the reservations for their separate use, improvement, cultivation and enjoyment; subject to the direction and control of the chiefs of the nation assembled in council; that the indians residing on the said reservations had become agriculturalists; and that individuals and heads of families had, with the assent of their chiefs and head men, and by consent of the nation, appropriated to their separate use, portions of such reservations, and had cultivated and improved the same and permanently resided thereon. The bill then charged that the defendant Waterman, who resided near the Cattaraugus reservation, had intruded himself upon the indian lands of that reservation, and had cleared and cultivated and occupied parts of the same for several years; and

Strong v. Waterman.

that he was also in the habit, and had been for six years or more, of cutting from the lands of the reservation large quantities of lumber, saw logs and fire wood, not only for his own use but also for sale, without the consent and against the will of the indians, and without right; whereby the lands of the nation' and the possession and use thereof were rendered much less valuable; that the chiefs of the nation had frequently remonstrated with the defendant, and requested him to relinquish his possession of the lands belonging to the reservation, and to refrain from trespassing or committing waste upon other parts of such lands; but that he had, notwithstanding, continued his encroachments until he claimed the possession and use of 1000 acres of the Cattaraugus reservation as against the nation; that, at the time of the filing of the bill in this cause, he continued to hold and claim the possession and use of the lands into which he had so obtruded himself, and threatened to maintain his possession thereof by force, and threatened to continue to commit further trespasses and waste upon other portions of the Cattaraugus reservation; and that it was impossible for the indians to enforce their rights to the possession or use of the lands thus occupied by the defendant, or to recover compensation for the injury sustained, or to protect the lands of the reservation from further injury by the defendant, by any proceedings in the common law courts. Various other facts were stated in the bill, showing the necessity of the interference of the court of chancery, to ascertain and settle the rights of the indians to the lands claimed and possessed by the defendant, and to prevent the occupation of other portions of the reservation by him, and the cutting of the wood and timber thereon. And the complainants prayed that the defendant might be decreed to account for the wood, timber, saw logs and other property by him cut upon or carried away from the lands of the reservation, and for the use and occupation of such portions of the lands as had been used or occupied by him, and to pay over the amount found due upon such accounting, for the benefit of the Seneca nation of indians; and that the defendant and his servants, agents and workmen might be perpetually restrained by the injunction and decree of

the court, from entering upon, using, or in any manner interfering with, settling upon, or controlling the possession of any portion of the Cattaraugus reservation, or any improvements or fields thereon; and from cutting wood, timber, or saw logs, on the premises, or carrying the same away, or committing waste, &c., and from hindering, molesting or disturbing the indians, or individuals of the nation, in the possession of any of the lands of the reservation. And that the complainants, for themselves, and in behalf of the Seneca nation of indians, might have such further or other relief in the premises, as might be agreeable to equity.

*D. Bowen,* for the complainants.

*G. P. Barker,* for the defendant.

THE CHANCELLOR. The rights of the indians in this state to the use, possession, and occupancy of the lands of their respective reservations, which have not been by them voluntarily ceded to the people of the state, or granted to individuals with the assent of the state, do not, at this time, admit of doubt. The ultimate fee of the land is undoubtedly in the state, or its grantees; but the right of the indians to the beneficial use and occupancy thereof, until they think proper voluntarily to relinquish and abandon that right, has been too long recognized in this state to be now called in question. No provision, however, has been made by law for the bringing an ejectment to recover the possession of indian lands in the Cattaraugus reservation. For the right to the possession is in several thousand individuals, in their collective capacity; which individuals, as a body, have no corporate name by which they can institute an ejectment suit. It is true, the act of the 31st of March, 1821, respecting intrusions upon indian lands, provides a mode in which settlers upon indian lands may be removed, by a summary application of the district attorney to a county judge. And the 1st, 2d and 5th sections of that act appear to be in force; as they were neither repealed, nor embraced in any of the provisions of the revised

Strong·*v.* Waterman.

statutes. If the word settler is sufficient to reach this case, where the defendant does not reside upon the reservation, but upon lands adjacent, and cultivates certain portions of the indian lands by intrusion, the complainants appear to have an ample remedy to recover the possession of the land, by the removal of the defendant therefrom. The bill, however, shows that the defendant interferes with the rights of the indians who attempt to occupy the lands claimed by him; which appears to be sufficient to entitle them to an injunction to protect them in the possession and enjoyment of their lands. And so far as the restraining of the cutting of timber, saw logs, and fuel is concerned, the laws have made no provision for the protection of the rights of the indians. The act of April, 1813, to prevent trespasses on indian lands, provided a sufficient penalty to protect the rights of the indians, and directed the penalty, when recovered, to be paid to them. (1 *R. L. of* 1813, *p.* 554.) The 5th section of the act of the 31st of March, 1821, before referred to, (*Laws of* 1821, *p.* 184,) directed one-half of the penalty to be paid to the county treasurer, and the other half to the indians. But in the revised statutes, although the penalty is retained, it affords no protection whatever for the injury which the indians sustain by the cutting of timber from their lands; as the statute directs the whole of the penalty, after payment of the costs and expenses of the prosecution, to be paid into the treasury of the county. (1 *R. S.* 209, §§ 87, 88.) And I have not been able to find any provision which authorizes the bringing of a suit, in a common law court, for the actual damages which the indians may sustain by trespasses upon their lands, or for the use of lands intruded upon; though it is possible there may be some statutory provision on the subject which the counsel, as well as the court, have overlooked.

The right of the indians to the undisturbed possession and enjoyment of their lands being established, by the humane principles and policy of the state, if the common law furnishes no sufficient remedy for the protection of those rights, it is a part of the acknowledged jurisdiction of this court to interpose for their relief. And I think, upon the case made by the complain-

ants' bill, that this court is bound to decree an account for the injury which the indians have sustained by the trespasses upon their lands which have already taken place; and also to protect them, by injunction, against the further threatened injuries from the defendant and those in his employ.

The laws of this state do not recognize the different tribes of, indians, within our bounds, as independent nations, but as citizens merely, owing allegiance to the state government; subject to its laws, and entitled to its protection as such citizens. (*Jackson* v. *Goodell*, 20 *John. Rep.* 188.) The indians cannot therefore institute a suit in the name of the tribe; but they must sue in the same manner as other citizens would be required or authorized to sue, for the protection of similar rights. And as the individuals composing the Seneca nation of Indians, and residing on, and entitled to, their several reservations, are too numerous to join in this suit by name, the bill is properly filed by these complainants in behalf of themselves and the residue of the nation residing upon their reservations. The bill also shows that the two persons named as complainants have been duly authorized by the council of chiefs; who have the right to direct in all matters relating to the general interests and business of the nation. The parties are therefore properly before the court, and the complainants are entitled to retain this preliminary injunction.

Application denied, with costs.