ROB'T McGREGOR, ASSIGNEE, ETC. *v.* M. D. W. LOOMIS, ET AL.

1. When a banker opens an account with his customer, and receives his deposit, he is not regarded as a simple bailee, but the relation of debtor and creditor is immediately created, with the implied agreement, on the part of the banker, that he will hold the fund, left in his care, subject to the order of the depositor, at such time and for such sums, to the extent of the deposit, as the depositor may direct to be paid.

2. The drawer of a check is not allowed the defense permitted the drawer of a bill, who may excuse himself by the want of presentment and of notice of non-payment. Unless the deposit is lost by the delay to present the check, or the depositor, in the meanwhile, has become insolvent, the drawer can not complain.

3. For all practical purposes, the relation of banker and depositor assimilates itself to a parol promise, on the part of the banker, to accept any check that the depositor may draw against his deposits; and thus the rule, which binds the drawee of a bill of exchange, as an acceptor, when he has promised, in advance, to honor it, furnishes a strong analogy.

4. A check is an absolute appropriation of so much money, in the hands of the banker, to the holder of the check, and there it ought to remain till called for, as, after notice to the drawee, it binds the fund in his hands.

5. The authority to receive the amount represented by a check, can not be lost to the holder, by the death of the drawer, before it is presented nor by his insolvency; and should the neglect of the holder have discharged the drawer, yet the right to the fund still remains: else the

depositary would not only be freed from all obligation to pay the check, but would also retain the deposit upon which it was drawn.

6. A *bona fide* holder of a check has his right of action against the drawee, in case payment is refused when the drawer has sufficient funds to his credit, on deposit with the drawee.

GENERAL TERM.—On error, to reverse a judgment rendered in favor of the defendant in error, at the special term of February, A. D. 1855, by Spencer, J.

George Milne & Co., bankers, etc., made a general assignment to the plaintiff in error for the benefit of creditors, and he, as such assignee, brought his action against M. D. W. Loomis, as maker, and Henry H. Southgate, as payee and indorser of a promissory note, drawn August 16, A. D. 1854, for $262.62, and payable ninety days after date, which had been discounted by Geo. Milne & Co., and after maturity passed to the plaintiff in error under the general assignment for benefit of creditors.

To this action, on the note, the defendants answered that on the 15th day of November, A. D. 1854, the defendant Loomis, being the owner and holder of a check, drawn the day previous, by Richard Southgate, on George Milne & Co., bankers, etc., for $525.24, presented the check at the bank for payment, and requested that his note, now sued on, and another in a similar amount, due on that day, be paid from the proceeds of the check; that payment of the check was refused, and the delivery and cancelation of the note was also refused; that the drawer of the check had at that time money to his credit, with George Milne & Co., more than sufficient to pay the check; that shortly thereafter, the general assignment was made to the plaintiff in error, and there was due to said Loomis from said George Milne & Co., the amount of said check and interest. The statements of the petition and answer were admitted to be true, and the cause below was submitted on the pleadings.

*Corwine, Hayes & Rogers*, for plaintiff in error.

*Collins & Herron*, for defendants in error.

Robert McGregor, Assignee, etc. *v.* M. D. W. Loomis, et al.

STORER, J. The plaintiff in error is the assignee of an insolvent banker. The defendant, Loomis, is the maker of a promissory note, payable to his co-defendant, and discounted by Milne, the plaintiff's assignor. When the note matured, Loomis held, for value paid, the check of one of Milne's depositors for an amount exceeding the face of the note, the drawee having, at the time, a much larger sum to his credit with his banker. This check was presented, and tendered in payment of the note, and was refused by Milne, who shortly afterward made a general assignment for the benefit of his creditors, to the plaintiff, who also refused to accept the check in payment of the note.

It is now sought to recover the amount of the note from Loomis, and compel him to look to the assignment for the satisfaction of his claim. In brief language, Loomis is required to contribute to the fund to discharge his own debt against Milne.

This is not the rule of equity as usually administered by the courts, and does not very fully recognize the ancient, and as we suppose, not yet obsolete maxim, that he who "asks equity must first do it," nor is yet in harmony with section 93 of the code, which secures to every defendant the right to set up in his answer, " as many ground of defense, counter-claim and set-off as he may have, whether they be such as have, heretofore been denominated legal, or equitable, or both."

The plaintiff is the voluntary assignee of Milne; he received the note after it became due, and is subject to all the equities of the debtor against the assignor. These equities are not confined to the usual defense, allowed when a bill or note has been negotiated when overdue, but embrace the different clauses of section 99 of the code, " when cross-demands have existed between persons, under such circumstances that if one had brought an action against the other, a counter-claim or set-off, could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other; but the two demands must be deemed compensated so far as they equal each other."

If upon an examination of the law, we can not sustain the right of Loomis to his set-off, or counter-claim, we must yield to the power of precedent. Still although, and the remark has been gravely uttered, that "hard cases make shipwreck of principles," it is our duty to ascertain what the true principle is, and not blindly follow, nor yet regard as infallible, any adjudication that is founded on the sole idea, "*lex ita scripta est.*" We have long since been told by Lord Coke, who was certainly not wanting in reverence for the past, "that the reason of the law is the life of law, for though a man can tell the law, yet if he know not the reason thereof, he shall soon forget his superficial knowledge."

What, then, was the relation the parties sustained to each other at the time the check was drawn, the depositor, the depositary, and the holder of the check?

When a banker opens an account with his customer, and receives his deposit, he is not regarded as a simple bailee, but the relation of debtor and creditor is immediately created, and the implied agreement, on the part of the banker, that he will hold the fund, left in his care, subject to the order of the depositor, at such times and for such sums, to the extent of the deposit, as he may direct to be paid. This is the general rule obligatory upon all who sustain the character, and pursue the business of bankers: so inflexible is it, that if the depositary neglects, or refuses to honor the check of the depositor, when in funds, he not only loses the public confidence, but is liable at once to his creditor for any injury he may have sustained. Byles on Bills, 13; 1 Barn. and Ad. 415, *Marzetti* v. *Williams, et al.*

Payment by checks has almost entirely superseded, in commercial cities, other modes of payment. They are taken and given in mutual confidence, with the distinct understanding that they not only represent cash, but practically are cash; hence they pass, by delivery through various hands, performing the purpose of as many payments as there are persons who receive them, or transactions in which they are used; and when, by the usages of trade, they are thus regarded, the

liabilities of all the parties should be clearly defined, as well as rigidly enforced.

The drawer of a check is not allowed the defense permitted to the drawer of a bill, who may excuse himself for the want of presentment and notice of a refusal to pay. Unless the deposit is lost by the delay to present the check, or the depositary, in the mean while has become insolvent, the drawer can not complain. If the money remains in the hands of the banker unappropriated, no injury is sustained. 1 Man. and Granger, 757, *Kemble* v. *Mills;* 2 Hill, 425, *Little* v. *Phœnix Bank;* Story on Prom. Notes, §493.

A banker transacting publicly the ordinary business of his calling, receiving daily deposits, and bound to meet with promptness the drafts of his customers, gives the community to understand that those who have funds in his hands, have not only the right to draw upon the deposit, but that all drafts will be paid on presentation : he opens virtually a letter of credit to his depositor, which is a guaranty to him, as well as to all who make advances upon the faith of it. For all practical purposes it assimilates itself to a parol promise to accept any check that the owner of the deposit may draw; and thus the rule which binds the drawee of a bill of exchange as an acceptor, when he has promised in advance to honor it, furnishes a strong analogy. 9 Mass. 55, 58, *Storer* v. *Logan;* 2 Metcalf, 53, *Ward* v. *Allen;* 18 Ohio, 126, *Lonsdale* v. *La Fayette Bank.*

Assuming that we have properly indicated the duties and liabilities of the parties to a check, let us inquire what interest in the specific fund is vested in the holder.

It is said by Chancellor Kent, in 3 Com. 104, "that a check is an absolute appropriation of so much money, in the hands of the banker, to the holder of the check, and there it ought to remain till called for." The same principle is affirmed by Judge Story, in Brown's case, 2 Story, 513, who quotes the whole passage from Kent, as the foundation of his judgment. This we believe to be the true rule. We have found no authority expressly denying it, or even doubting its soundness,

that should outweigh the opinions of these eminent jurists whose exposition of the law is sustained by the common sense and true morality of the case.

The authority to recover the amount represented by a check can not be lost to the holder by the death of the drawer before it is presented, or even his insolvency; and should the neglect of the holder have discharged the drawer from his liability, the right to the fund still remains, else the depositary would not only be freed from all obligation to pay his check, but would retain also the deposit upon which it was drawn.    We can not permit such a result to follow, nor yet reproach the law with sanctioning the gross injustice that would necessarily be involved.

We need not define a bill of exchange, or describe the points of difference which distinguish it from a check. Nor would we attempt to reconcile the conflicting opinions, which have so thoroughly mystified some of the prominent distinctions heretofore considered to exist between these classes of commercial paper.    If we were bound to follow each successive adjudication, the "glorious uncertainty of the law," now a vulgar apothegm, would no longer be a paradox.

We allude to bills of exchange only to justify the opinion, to which we have arrived from a full examination of the cases referred to by counsel, as well as the many we have found in our own researches.

"It has been held," observes Mr. Spence, 2 Eq. Jur. 860, "that a bill, drawn in respect to a particular demand, in favor of a creditor, is an assignment in equity of that demand, *pro tanto*, to the legal holder of the bill."    See also 4 Simons, 607, *Lett* v. *Morris.*

The same principle is stated in 5 Wheaton, 286, *Mandeville* v. *Welch.*    " In cases," say the court, " where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund, and after notice to the drawee, it binds the fund in his hands."

This is but the recognition of the rule, "that when an order

is given by a debtor to his creditor, directed to a third person having in his hands funds of the debtor, in specie, or in the way of a debt due, desiring him to pay the creditor out of that specific fund, is a binding, equitable assignment of so much of the fund, or credit, not only against the party giving the order, but his assignees in bankruptcy, or in insolvency. 1 Madd. 39, *Ex Parte Alderson;* affirmed on appeal, 3 Swanston, 392.

"If he could transfer," said Lord Thurlow, in a case of this description, "he has done it, and it being his own money he could transfer; the order being shown to the debtor, he is bound, and the transaction is complete, even as against assignees." 1 Ves. Jr. 280, *Yeates* v. *Groves;* 4 Myl. & Cr. 702, *Burn* v. *Carvalho;* 1 Hare, 73, *Meux* v. *Bell.* See also 2 Spence's Eq. Jur. 860, 861; 3 Barbour, 262, *Hoyt* v. *Story.*

The assignee claims, however, that though it is competent for the owner of a fund to assign the entire amount, and the fund will then pass, he can not compel his debtor to discharge the debt by installments; in other words, he can not divide the fund into several parts, and require that each shall be paid. Unless the debtor says he consents to the arrangement, or accepts the order to pay, he is not bound to discharge his obligation, except by the liquidation of the entire sum. "The debtor has the right to stand upon the singleness of his original contract, and decline any legal or equitable assignments by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he shall be obliged to pay in fractions to other persons." *Mandeville* v. *Welch,* already cited; 6 Cushing, 287, *Palmer* v. *Merrill;* 3 Greenleaf, 346, *Robbins* v. *Bacon.*

The principles thus asserted, we are asked to apply to checks upon a banker, as controlling the relation that legally subsists between the depositary and the depositor.

We find no English case where the question is directly determined. In New York, there are reported the following cases: 11 Paige, 607, *Dykers* v. *Leather Man. Bank;* 3

Comstock, 247, *Copperthwaite* v. *Sheffield;* 2 Selden, 412, *Chapman* v. *White.* In Massachusetts, there is but one reported case: 1 Gray, 605, *Bullard* v. *Randall.*

Chancellor Wadsworth decided in the first case, that there was nothing in the case showing where checks were first demanded, or who, of the first drawers, was entitled to the preference when the bankers had paid a subsequent check, without notice of the drawing of the former one; and the mere priority would give no preference. It would be utterly impossible for the bankers in New York to do business, if they were obliged to settle conflicting claims of the holders of checks.

Gardner, J., in *Chapman* v. *White,* held that the right of the depositor was a chose in action; and it was immaterial whether the implied engagements upon the part of the banker was to pay the sum in gross, or in parcels, as the depositor might require. In either case, the draft or check of the latter would not transfer the debt, or the lien upon it, to a third person, without the assent of the depositary.

In 3 Comstock, the question decided was that the operation of a bill of exchange was to draw after it the fund upon which it was drawn.

Shaw, C. J., in 1 Gray, takes the ground that the whole fund only can be assigned, and refers to 20 Pick. 15, to which we have above alluded. It was there held, "that a draft by the creditor on his debtor, in the form of a bill of exchange, to the amount of the debt, or the whole fund in his hands, is a good and valid assignment of the debt, or fund."

The result of these decisions is but the application of the rule where the debtor is not bound to pay in parcels; and the other affirmation, that a contrary decision would produce complexity in business, and disarrange the hitherto settled mode of keeping the accounts between bankers and their customers.

There is no distinction made between the banker and the general debtor; both are placed in the same category.

And yet, the opinion in Selden was doubted by Judge

Edwards, one of the members of the court, who decided the case; and Judge Ruggles, in 3 Comstock, 120, *Harris* v. *Clark*, in deciding the case, says: " The customer deposits his money in a bank for safe keeping, with the understanding that he may draw by checks, in such sums, and at such times, as may suit his convenience. The bank, or banker, receives it on that condition, and undertakes to keep the amount, and pay the money accordingly. Checks are used, and treated as cash, and by the course of business, they are paid by the bank, or banker, on whom they are drawn, with the same punctuality and certainty as if the deposits were specifically the money of the customers. Checks are, therefore, practically equivalent to a transfer of so much of the fund deposited." See also Byles on Bills, 79, Sharswood's Notes.

The court, even in *Mandeville* v. *Welch*, qualify the general principle, and very clearly, we think, indicate what their opinion would be in a case like the present. They say: " Where the order is drawn, either on a general or a particular fund, for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, except he consent to the appropriation by the acceptance of the draft, or an obligation to accept may be fairly implied from the custom of trade, or the course of business between the parties as a part of their contract." The same doctrine is reaffirmed in 5 Peters, 600, *Tiernan, et al.* v. *Jackson*.

There could be no doubt of the liability of the debtor to pay, should he accept, or agree to accept, an order for a part of a larger sum due to his creditor, and the agreement need not be established in any other mode than would be required to prove an ordinary fact in the transaction of commercial business, where usage so often determines the nature of the contract, and controls the liability of the parties. An agreement to do an act, may or will be inferred from the situation of the parties, and the nature of their employment, as if they have expressly undertaken to perform it.

We can see no just reason, therefore, why the holder of a check for value, who has taken it in the faith that the drawee

was not only able, but willing to honor it, should not, when he has notified the banker, be permitted to hold the specific fund appropriated by the terms of the check. He would, in all analagous cases, be entitled to all the security the order properly represented, among which, not the least, usually is the right to the particular deposit upon which it is drawn. A check is but an order to pay the holder so much money out of a fund in the drawee's hands, deposited for the express purpose of being recalled by draft, at the option of the customer, and there is the same justice in subjecting the amount thus appropriated, as there would be if an order had been drawn, or an assignment made of the whole deposit. If the rule is of any value in the latter case, it is equally so in the former.

In the present case, the check was presented to the banker, who held sufficient funds in his hands, of the drawer, to pay it. The holder pursued the same course he would have been required to have taken had his check been drawn for the entire fund; and, we think, became thereby invested with the same right to subject the particular amount named in his check, as the drawer possessed at the time he drew it. The assignment of the deposit carried with it all the remedies to recover it that belonged to the assignor, and under the code it is immaterial whether the remedy is legal or equitable.

In thus deciding we violate, we feel satisfied, no legal principle, overrule no reported decision of our Supreme Court, and establish no new or unreasonable rule. On the contrary, we give merely the full benefit of the contract to the party who is alone entitled to claim the fund represented by the check. We thus maintain the doctrine of equitable assignment in its true spirit, without refining away, by technical niceties, or the dread of supposed innovation, the rights of the parties, securing the substance without grasping only the shadow.

We may have disregarded the adjudications of some of the State courts, but we are not bound to follow them.

unless we can so understand the law, or, at least, clearly appreciate the reasons upon which the decisions have been made; and when we find they are to be defended on the technical grounds asserted by the judges who have delivered them, we may well adopt the language of our Supreme Court, in 3 Ohio, 32, *Roe, for the use of Jonas*, v. *Bank U. S.:* "The doctrine appears to have originated, and indeed to continue, in mere *dicta:* we do not know that it has before been agitated in this State, and we feel at liberty to establish the principle as to us appears consonant with justice."

We hold, therefore, that the defendant, Loomis, was invested with the right of the drawer, and entitled to the full benefit of the check he held upon the depositary. He will be permitted, therefore, to set up his claim in this action as a defense to the plaintiff's claim.

Judgment for defendant.

Spencer, J., concurred.

Gholson, J., dissented.