(29 Misc. Rep. 428.)

ONONDAGA NATION et al. v. THACHER.

(Supreme Court, Special Term, Onondaga County. November, 1899.)

1. INDIANS—HISTORICAL RELICS—EQUITABLE ACTION TO RECOVER.
   Where wampum belts had been used by a league of Indian nations to commemorate important events, and served them as a purpose of perpetuating the history of their race, such property, being of peculiar and special interest, the loss of which cannot be compensated for by money damages, may be recovered, from persons claimed to be wrongfully in possession. thereof, by a suit in equity.

2. SAME—DEMAND.
   Where the main object of a suit in equity brought by Indians was to recover possession of wampum belts, claimed to be historical emblems of an Indian league, and alleged to have been sold by the wampum keeper in violation of his duties, and afterwards purchased by the defendant, in good faith, for an adequate consideration, from the keeper's vendee, a

demand upon the defendant for their delivery was a necessary prerequisite to the action.

**3. SAME—INDIAN TRIBE—CAPACITY TO SUE.**
A suit cannot be maintained by and in the name of an Indian tribe, in relation to tribal rights, without express statutory authority.

**4. SAME—INDIVIDUALS.**
Under Laws 1892, c. 679, §§ 2, 5, making Indians liable on their contracts, and providing that any "right of action, jurisdiction of which is not conferred upon a peacemakers' court, may be * * * enforced in any court of the state, the same as if all the parties were citizens," individual Indians have capacity to sue in the state courts, except as provided in such act.

**5. EVIDENCE—HEARSAY—HISTORICAL WRITINGS.**
Historical writings, based on hearsay and tradition relating to an Indian league and the tribes composing it, their government, laws, customs, etc., were competent evidence on an issue whether wampum belts of the league were historical emblems, and whether their sale by the wampum keeper was in violation of his duties.

**6. INDIANS—PERSONAL PROPERTY.**
Where wampum belts used as historical emblems by an Indian league were left in the possession of the "wampum keeper" of the league, upon its dissolution, after which the tribes composing it ceased to treat them as property, and acquiesced in his possession of them as individual owner for a long time, they became mere curiosities and relics, which he could sell, and hence could not be recovered in an action against the purchaser, brought by individual Indians belonging to one of such tribes.

Action by the Onondaga Nation and others against John Boyd Thacher to recover possession of wampum belts obtained by defendant through intermediate transfer from an Onondaga Indian. Dismissed.

E. W. Paige, for plaintiffs.
John A. Delehanty, for defendant.

HISCOCK, J.   The object of this action, in brief, is to have it adjudicated that the Indian league of Five Nations, composed of the Onondagas, Oneidas, Mohawks, Senecas, and Cayugas, and afterwards made Six Nations by the addition of the Tuscaroras, used wampum belts to commemorate important events; that these belts, by an association of ideas with them, served the purpose of a history; that there was an official of the league known as "wampum keeper," whose duty it was to preserve the wampums, and upon proper occasions to expound their meaning and signification; that the Onondaga Indian, from whom defendant's assignors obtained the wampums in suit, had possession of them as such wampum keeper; that such sale by him was unauthorized; and that, the property having a peculiar and special interest not to be measured by money damages, this action may be maintained in behalf of the Indian nations in question to, in effect, recover their possession.

The right of plaintiffs to maintain this action is questioned upon many grounds, involving both the merits of their claim and technical features of the action.

It was not claimed upon the trial, and is not now by defendant's brief, that equity has not jurisdiction of such an action, and might not, upon proper facts, render a judgment such as is sought here, and the authorities cited by plaintiffs' counsel sustain his conten-

tion that it has such jurisdiction. Duke of Somerset v. Cookson, 3 P. Wms. 390; Pusey v. Pusey, 1 Vern. 273; Fells v. Read, 3 Ves. 70; Lloyd v. Loaring, 6 Ves. 773; Earl of Macclesfield v. Davis, 3 Ves. & B. 16.

It is, however, urged that a demand upon defendant for the delivery of the belts was a necessary prerequisite to the action. I think that view was right in this case, and that no sufficient one was proved. In fact, my attention is called to none at all, and the argument of plaintiffs' counsel is that none was necessary.

Defendant purchased the belts for $500, which certainly, in view of the prices paid by others for these and other ones, was not suspiciously low. There is nothing to impugn his good faith. On the contrary, he was induced by others, as a matter of public spirit, to make this purchase, with his own funds, to help the Indian exhibit, at Chicago, there being no public moneys available for that purpose. Accepting for the present plaintiffs' version of the character of these belts, and of their original custody by the Indian who sold them, defendant was not, in my opinion, chargeable with notice or knowledge thereof at the time of his purchase. He was a purchaser in good faith and for value, and was entitled to the benefit of a demand before action was brought against him. A prior demand might not be essential to some of the details of plaintiffs' prayer for relief, as that defendant be restrained from defacing or parting with the property, etc. But the substantial object of the action is to take from defendant the possession of the wampums. None of the cases cited by plaintiffs' counsel are authority for dispensing with such demand. In Pattison v. Skillman, 34 N. J. Eq. 344, although that question was not discussed, it would appear that there had been a refusal to deliver the chattels after demand. The same is true of Fells v. Read, 3 Ves. 70. And in many of the other cases cited by him it appears that the detention of the property sought was wrongful in its very inception, and in known defiance of the rights of those seeking it. I see no reason why defendant in this action should not have the benefit of the same preliminary opportunity to voluntarily relinquish his possession, after notice of plaintiffs' claims, to which he would have been entitled before an action at law. Hovey v. Bromley, 85 Hun, 540, 33 N. Y. Supp. 400; Gillet v. Roberts, 57 N. Y. 28.

In addition to the plaintiffs originally named in this action by order made upon the trial, the following persons were brought in, and by appropriate allegations made parties plaintiff, viz.: Shoheh-do-nah, an Onondaga Indian; Ha-on-wengo-wenle, an Onondaga Indian; Jarvis Farmer, an Onondaga Indian; Ho-do-eh-go-ah, a Seneca Indian; Ha-ja-ah-gwysh, a Cayuga Indian; and the University of the State of New York. It is insisted that none of the plaintiffs original or subsequently added can maintain this action. So far as the University of the State of New York is concerned, this objection is addressed to its want of legal interest; in the case of the others, it is based upon an alleged lack of legal status to maintain any suit in this court.

Evidence was given of a purported transfer by certain alleged chiefs of the Onondaga Indians to the University of the State of

New York of the wampums in suit; also of certain proceedings up-
on the part of the same chiefs which purported to "raise up" such
university as "wampum keeper," and thereby entitle it to the pos-
session of the wampums. The complaint is not framed for a re-
covery upon the theory of a sale of the wampums to said plaintiffs.
In fact, such claim would be diametrically opposed to the plain-
tiffs' theory of the action, that such wampums were the property
of the Six Nations, and could not be bargained and sold. Neither
has plaintiffs' counsel, by his closing brief and argument, at all
pressed the other branch of the claim, that said university had be-
come interested as wampum keeper. Independent of defendant's
contention, that such duties would be quite outside of those for
which said university is supposed to have been organized, there
seem to me to be difficulties with the claim from the Indians' stand-
point. In the light of all the traditions, not to say romance, which
have been woven into this subject of Indian history, the idea seems
somewhat incongruous of the University of the State of New York
as the final successor in a line of red-skinned and pagan wampum
keepers, reaching back beyond the days when Hendrik Hudson
sailed up the North river. Tested, also, by the somewhat rigid,
and entirely unromantic rules of legal title, I am unable to find
sufficient proof that the proceedings taken by the Onondaga In-
dians were sufficient to confer the position of wampum keeper, as-
suming that there is such a one. This view limits the right of re-
covery, if any, to the Indian plaintiffs, and leads to a consideration
of the objections urged by defendant to the right of an Indian tribe
or individual Indians to sue.

It is not desirable to review, at length, all of the reasons and
arguments which have been or may be advanced in favor of or
against the right of a tribe or nation of Indians, as the Onondaga
Nation, to bring suit. The weight of authority in this state seems
to decisively settle the question in the negative.

In the first place, the statutes of the state, as collected and em-
bodied in the Indian Law of 1892 (chapter 679), both by general pro-
visions and by those specially relating to the Onondaga Indians,
indicate the intent upon the part of the state to treat the Indians
as wards, and, except when otherwise specially provided, to trust
the protection of their rights, as tribes or nations, to its agents,
rather than to proceedings by themselves. Where it was deemed
wise to have tribal action in relation to tribal rights, as in the case
of trespasses upon tribal lands, and in the case of certain rights in
"oil spring reservations," express authority is given for the prose-
cution of suits in the name of the "nation" interested. Indian Law,
§§ 11, 55. There was, of course, no necessity for this, if the gen-
eral power was possessed by the different tribes or nations of In-
dians, as such, to bring suits. In addition to this reasoning, the
subject is settled by direct adjudication. Strong v. Waterman, 11
Paige, 607; Seneca Nation v. Christie, 126 N. Y. 122, 27 N. E. 275;
Montauk Tribe of Indians v. Long Island R. Co., 28 App. Div. 470,
51 N. Y. Supp. 142.

But it is urged by plaintiffs' counsel that, even though an action
may not be maintained by and in the name of a nation or tribe,

individual Indians have capacity to sue. In this I think he is correct. It is so indicated, if not authoritatively adjudicated, in Strong v. Waterman, 11 Paige, 607; Montauk Tribe of Indians v. Long Island R. Co., 28 App. Div. 470, 51 N. Y. Supp. 142; Crouse v. Railroad Co., 49 Hun, 576, 2 N. Y. Supp. 453.

Nor can I see any other reasonable interpretation of the Indian law than that, except as otherwise expressly provided, an Indian has access to, and is subject to the jurisdiction of, our courts. Section 2 of that statute provides that "An Indian shall be liable on his contracts not prohibited by law; and a native Indian may take, hold and convey real property the same as a citizen," etc. Section 5 provides that "any demand or right of action, jurisdiction of which is not conferred upon a peacemakers' court, may be prosecuted and enforced in any court of the state, the same as if all the parties thereto were citizens."

The disposition of these somewhat preliminary questions leads to a consideration of the substantial issue in the case. Are the wampum belts now in the possession of the defendant of the character claimed by plaintiffs? Are they historial emblems, constituting part of the annals of the Iroquois league, formed long before the Revolutionary War, and still existing? And have they been transferred by some wampum keeper, in violation of his duties and obligations? There is involved, at the outset, in the determination of this issue, the consideration of the competency of a large portion of the evidence offered by plaintiffs. This consisted of extracts from Morgan's. "League of the Iroquois," published in 1851, and Clark's "History of Onondaga." The first of these works, so far as disclosed by the evidence, was a general history of the league, and of the Indian nations or tribes composing the same, their government, laws, customs, etc. The second, although appearing by its title to be a history of one of these nations, did, as matter of fact, as appears by the extracts offered, treat of matters pertaining to the entire confederation of the Five, or, as it afterwards became, the Six Nations. Some of these extracts offered in evidence relate to ancient times, and are manifestly based upon hearsay and tradition; some, as those in reference to Os-sa-hin-ta and his associate chiefs of the Onondagas, relate to alleged facts of a comparatively recent date; some, as those descriptive of the various wampums and of the bag in which they were kept, are apparently based upon the personal observation of the historian, and do not relate to facts of general historical interest and repute. It was conceded upon the trial that each of these historians was dead, and no question was raised as to their character and reliability as such. I think that the extracts from Morgan's History, and those of the first class from Clark's, were competent evidence. Greenl. Ev. (16th Ed.) §§ 139, 497; Bogardus v. Trinity Church, 4 Sandf. Ch. 675; McKinnon v. Bliss, 21 N. Y. 206; Crill v. City of Rome, 47 How. Prac. 398.

Considering this, and the other evidence before me, I am able to agree without much difficulty with part of plaintiff's theory in regard to these wampums. While the subject necessarily rests upon hearsay, and is pretty largely enveloped in tradition and legends,

I think it is reasonable to find that these wampums were used by the Indians as a means of commemorating and preserving the memory of important events, such as the making of treaties, the coming of the white man, etc., and that, while the league of the Iroquois was in active existence, the nations composing it employed this method of preserving the history of the events which they conceived to be of importance. It is reasonable also to assume that some one of their number was elevated to the position and duty of keeping these various wampums, and of expounding them, and emphasizing their meaning and significance, upon ceremonial occasions. All of the historians and the students of Indian history who have been sworn in this case seem to agree upon this custom or method of the Indian nations in question. The evidence also would seem to fairly permit the finding that the wampums in question here were part of those made and used and possessed by the league in question. As I have said, there is much of tradition and legend involved in going to this extent, but whatever there is of it seems to have been accepted as history by those who have studied the subject. This, however, is as far as I feel willing to go. I am not willing to hold that on February 10, 1891, this old league, composed first of the Five and then of the Six Nations, had any active or actual existence, or that Thomas Webster, the Onondaga Indian from whom these wampums were obtained by the defendant's assignor, was at that date wampum keeper for those nations, and that he held these wampums as such, and in violation of his duties sold them, or that there is any such identity and community of interest between these individual plaintiffs and members of Six Nations in having these wampums preserved and restored to some custodian, as permits the maintenance of this action. The evidence seems altogether too shadowy to sustain these propositions.

I am rather led to the conclusion that at and long before the time mentioned the league to which these wampums are said to have belonged had been dissolved; that we had come to associate even its name with a period long gone by; that the nations which composed it had become separated, and to a large extent scattered and dispersed, and wards of the government; and that these wampums are curiosities and relics of a time and condition and confederation which has ceased to exist, and that Webster had possession of them as one who had gathered them as such relics. The evidence given with reference to the Onondaga Nation, and with reference to Webster, indicates, to my mind, that they had ceased to treat or regard them as the property of the Onondaga Nation, much less as that of the Iroquois league, and that there had been long acquiescence in Webster's possession of them as an individual owner.

Independent of their original significance and use, they are relics of interest to at least the people of this state. They are even more than that. They are to us bits and items in the history of the Indians, and of a once powerful confederation. As such, the public have an interest in their preservation. But, in my opinion, that must rest upon the voluntary action of the defendant, rather than

be enforced by a judgment in this action.   The conclusions reached upon the points considered render it unnecessary to consider the further defense interposed of the statute of limitations.   Findings and judgment may be prepared, dismissing plaintiffs' complaint, with costs, and be settled upon five days' notice.

Complaint dismissed, with costs.