KINDERHILL SELECT BLOODSTOCK,
INC. and Constance Moss, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 93–CV–1314.

United States District Court,
N.D. New York.

Oct. 29, 1993.

Bruce R. Rosenthal, Carusone, Carusone Law Firm, Saratoga Springs, NY, for plaintiffs.

Barbara D. Cottrell, Asst. U.S. Atty., Albany, NY, for defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

### I.  BACKGROUND

On August 17, 1993, agents of the Internal Revenue Service ("IRS") seized four thoroughbred horses allegedly owned by the plaintiffs as a levy for back taxes owed by the Kinderhill Investment Company, Inc. ("Kinderhill Investment").  Three of the horses currently go by the names of M.J. Bean, Senorita Constanza, and Malicious (formerly Hardly Risen), and the fourth horse is an unnamed filly.  Plaintiffs allege that Kinderhill Investment has no interest in these horses with the possible exception of M.J. Bean.  Plaintiff Constance Moss claims a one-third ownership interest in M.J. Bean and an entire ownership interest in Senorita Constanza, Malicious, and the unnamed filly, and claims that these interests are superior to the federal tax liens.  The United States claims that Kinderhill Investment was the owner of the horses when the federal tax liens arose.

The IRS had scheduled the sale of these four horses on Wednesday, October 20, 1993, but this sale was temporarily enjoined by this court. The parties appeared before this court in Albany, New York on Monday, October 25, 1993 for a hearing at which the plaintiff sought a preliminary injunction on the sale of the horses by the IRS until such time as the issue of ownership of the horses could be conclusively decided.

## II. DISCUSSION

26 U.S.C. § 7421 prohibits suits to restrain assessment or collection by the Internal Revenue Service. However, 26 U.S.C. § 7421(a) provides several exceptions, including suits for wrongful levy brought under 26 U.S.C. § 7426. Specifically, § 7426(b)(1) allows a court to enjoin a levy or sale if it determines that the plaintiff has rights in the property superior to the federal tax liens and the levy or sale would irreparably injure those rights.

In order to obtain a preliminary injunction in the Second Circuit, the movant must make a showing of: (1) irreparable harm; and either (2) likelihood of success on the merits; or (3) sufficiently serious questions going to the merits to make them a fair ground for litigation; and (4) a balance of hardships tipping decidedly in favor of the movant. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Irreparable harm "means an injury for which a monetary award cannot be adequate compensation." *Jackson Dairy* at 72. It is to be further kept in mind that a preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." *Medical Soc. of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977).

■ Fed.R.Civ.P. 64 holds that all remedies providing for seizure of property for the purposes of securing a judgment ultimately sought in the action must be carried out in the manner provided by the law of the state where the district court sits. Fed.R.Civ.P. 64(1) says that the state law shall be used unless a United States statute prevails. No evidence has been presented to show that any U.S. statute prevails in this case, and so it is proper to follow the New York CPLR.

■ New York CPLR § 7109(a) serves as a basis for granting a preliminary injunction. CPLR § 7109(a) states that "where the chattel is unique, the court may grant a preliminary injunction or temporary restraining order that the chattel shall not be removed from the state, transferred, sold, pledged, assigned or otherwise disposed of until the further order of the court." Plaintiffs submit that the horses involved are unique, and this court agrees in light of precedent from New York State courts which have previously found such items as works of art, historical artifacts, perfume ingredients, and certain cars to be unique. *See, e.g., Staff v. Hemingway,* 47 A.D.2d 709, 365 N.Y.S.2d 84 (1975) (finding paintings unique); *Onondaga Nation v. Thacher,* 29 Misc. 428, 61 N.Y.S. 1027 (1899) (finding wampum belts unique); *Chabert v. Robert & Co.,* 273 App.Div. 237, 76 N.Y.S.2d 400 (1948) (finding oils used to make perfumes unique); *Giordano v. Grand Prix Sales, Service, Restoration Co.,* 113 Misc.2d 395, 449 N.Y.S.2d 127 (1982) (finding a 1967 Ferrari unique).

### A. Irreparable Harm

As for irreparable harm, plaintiffs have asserted that sale of the horses would cut off any of their alleged ownership interests permanently. Plaintiffs stated that their ultimate goal is to get their horses back and asserted that this goal would be obviously frustrated by the sale of the horses to a third party. Because their goal is to have the horses returned to them, and the horses are unique, money damages would not be an adequate remedy. Furthermore they note that because of the difficulty in assessing the fair market value of the horses, and the inability of the IRS to sell the horses with thoroughbred certification, if the sale was to occur, they would be unlikely to ever receive the market value of their property even upon the award of a money judgment. Thus, the plaintiffs have shown irreparable harm.

### B. Serious Questions Regarding the Merits or Likelihood of Success on the Merits

■ On the other hand, plaintiffs have neither shown a likelihood of success on the

merits, nor sufficiently serious questions going to the merits to present a fair basis for litigation. Substantial evidence presented during the preliminary injunction hearing on October 25, 1993 has led this court to the conclusion that questions on the merits are not sufficient to present fair grounds for litigation or to show a likelihood of success on the merits.

First, the plaintiff Constance Moss relied heavily on Jockey Club certificates which listed her as the owner as proof of her property interest in the horses. However, a representative of the Jockey Club, Nancy Colletti Kelly, testified that the Jockey Club assumes that statements of ownership made by those seeking certification for their horses are true and does not conduct an independent investigation to verify ownership. Thus, the listing of Constance Moss as owner on the Jockey Club certificates for the horses does not present strong evidence that she was the true owner at the time of the imposition of the federal tax lien.

Second, further documentation presented at the hearing supports that Kinderhill Investment had ownership interests in the horses. The defendant presented an affidavit filed in the United States Bankruptcy Court for the Northern District of New York made by Thomas A. Martin, the President of Kinderhill Corporation, on December 23, 1992 which detailed the assets owned by Kinderhill Investment in reference to a Chapter 7 bankruptcy proceeding. This affidavit states that M.J. Bean, Hardly Risen (now Malicious), and Senorita Constanza were among the assets owned by Kinderhill Investment. Furthermore, the affidavit also stated that the yearling of Cosmic and Cormorant (known as the "unnamed filly") was also an asset of Kinderhill Investment.

Third, Constance Moss testified that she purchased the four horses from Kinderhill Select Bloodstock. She agreed to pay $45,000 for the four horses with a 10% downpayment. The form of her downpayment, however, took the form of four checks totaling $6550.92 paid to John Hertler Stables, Inc., New York State Electric & Gas, and Kinderhill Investment between May 8, 1992 and June 16, 1992 to cover debts owed by Kinder-

hill Investment. This evidence strongly shows that she was attempting to purchase the horses from Kinderhill Investment rather than Kinderhill Select Bloodstock. Furthermore, the sale agreement took the form of "informal notes" which were not presented as evidence by the plaintiff and no fixed terms had been established for payment of the balance of the $45,000 purchase price. This evidence tends to show that Kinderhill Investment, rather than Constance Moss, was the owner of the horses at the time the federal tax lien was imposed. It is also inconclusive whether ownership passed to Constance Moss at the time the downpayment was made, and the plaintiffs have not met the burden to show that ownership did transfer.

Fourth, considered in light of the other evidence, a settlement agreement dated February 19, 1993 between Equine Capital Corporation and Kinderhill Investment also adds weight to the determination that Kinderhill Investment owned the three horses Hardly Risen (now Malicious), Senorita Constanza, and M.J. Bean. This agreement states that Kinderhill Investment is the recognized owner of these horses.

Given the weight of evidence that Kinderhill Investment owned the four horses, the uncertain nature of the transaction by Constance Moss to purchase these horses, and the fact that the plaintiffs presented no substantive evidence to show ownership of the horses by Kinderhill Select Bloodstock at any time, it is unlikely that the plaintiff would succeed on the merits of her claim of ownership in future litigation. Furthermore, substantial questions as to the merits of ownership have not been presented successfully by the plaintiffs who had the burden to do so. Plaintiff Moss presented evidence that she made a downpayment for the purchase of the horses but presented no convincing evidence to show that the downpayment itself resulted in her ownership of the horses. Thus, in light of the fact that the plaintiffs have not sufficiently shown a substantial question on the merits of ownership or likelihood of success on the merits in future litigation, and because preliminary injunctive relief should not be lightly granted, this court denies the

motion for a preliminary injunction to further enjoin the sale of the four horses M.J. Bean, Senorita Constanza, Malicious, and the unnamed filly by the Internal Revenue Service.

**IT IS SO ORDERED.**