WALLACE JEMISON, Respondent, v. THE BELL TELEPHONE COMPANY OF BUFFALO, Appellant.

1. INDIANS — TONAWANDA NATION OF SENECA INDIANS — JURISDICTION OF STATE OF NEW YORK OVER LANDS OWNED BY NATION AND MEMBERS THEREOF — CONSTITUTIONALITY OF STATUTE (L. 1902, CH. 296) REGULATING THE ERECTION OF TELEPHONE AND TELEGRAPH LINES UPON SUCH RESERVATION AND LANDS. Under a decision, made in 1786, by commissioners appointed by the states of Massachusetts and New York to settle a controversy between such states relating to lands now held by the Tonawanda Nation of Seneca Indians, and under a subsequent treaty between such tribe and the United States government, the state of New York exercises exclusive sovereignty and jurisdiction over the Tona-

wanda Nation of Seneca Indians and the lands held by such nation or by individual members thereof, and consequently the provisions of the United States statutes enacted for the regulation of commerce with the Indian tribes pursuant to the Constitution of the United States (U. S. Const. art. 1, § 8, subd. 3) are not violated by the statute (L. 1902, ch. 296) amending the Indian Law (L. 1892, ch. 679) by adding thereto a new section (89), providing that when any telephone or telegraph company shall erect poles, for the purpose of supporting telephone or telegraph wires, upon lands allotted to or otherwise owned by individual members of the Seneca Nation on the Tonawanda reservation, the damages caused thereby, to be fixed by agreement or in condemnation proceedings, shall be paid to such owners in addition to any sum paid to the council of the nation for the privilege of erecting poles upon the reservation.

2. SAME — WHEN LANDS OCCUPIED BY MEMBERS OF NATION DEEMED TO HAVE BEEN ALLOTTED UNDER THE INDIAN LAW (L. 1892, CH. 679, § 56) — WHEN OCCUPANT OF LANDS MAY MAINTAIN ACTION OF EJECT-MENT AGAINST TELEPHONE COMPANY ERECTING POLES AND WIRES ON HIS LANDS. Where a member of the Tonawanda Nation of Seneca Indians has occupied and been in undisputed possession of lands within the reservation, purchased by his mother from the chiefs of the nation in 1859, for a period of more than twenty-two years, the presumption that such occupant holds the lands under an allotment within the meaning of section 56 of the Indian Law (L. 1892, ch. 679, § 56) is controlling, and he must be deemed to be the owner in fee, having the full Indian title, as a member of the Tonawanda Nation of Seneca Indians, to the land in question, subject to the easement of the public, for the purposes of travel in a highway running through such lands; and as such owner in fee is entitled to maintain an action of ejectment against a telephone company which has erected telephone poles and stretched wires upon his lands along the highway without his consent, notwithstanding the fact that the company has obtained permission from the council of the nation to erect such poles and wires across the lands of the reservation.

Jemison v. Bell Telephone Co., 109 App. Div. 911, affirmed.

(Submitted December 10, 1906; decided December 21, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 2, 1905, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles B. Sears* for appellant. The plaintiff cannot maintain this action, as there is a failure to prove that he is an

allottee.   (L. 1849, ch. 420, §§ 7–10; L. 1863, ch. 90, §§ 16, 17.) Chapter 296 of the Laws of 1902 is unconstitutional.   (*Lemont* v. *Cheshire,* 65 N. Y. 30; *Jarvis* v. *Lynch,* 157 N. Y. 445; *Onondaga Nation* v. *Thacher,* 53 App. Div. 561; *Cherokee Nation* v. *Georgia,* 5 Pet. 1; *U. S.* v. *Holliday,* 3 Wall. 407; *Fellows* v. *Deniston,* 5 Wall. 761; *U. S.* v. *Kagama,* 118 U. S. 375; *B., R. & P. R. R. Co.* v. *Lavery,* 75 Hun, 399; *Ryan* v. *Knorr,* 19 Hun, 540; *Shongo* v. *Miller,* 45 App. Div. 339; 169 N. Y. 586; *Matter of Middleton,* 82 N. Y. 196.)

*Adelbert Moot* for respondent.   The plaintiff showed an allotment of the lands in question by the long-continued occupancy of himself, his grantors and ancestors, and by his improving, cultivating and fencing them under the eyes of the tribe.   (*Seneca Nation* v. *Christie,* 126 N. Y. 122; *Seneca Nation* v. *Lehly,* 55 Hun, 83.)   The legislature of this state has authority to allow the Tonawanda Indians to make any just disposition of their reservation, or any portion thereof (*Johnson* v. *L. I. R. R. Co.,* 162 N. Y. 462.)

EDWARD T. BARTLETT, J.   The plaintiff had been for nineteen years, at the time of the trial, a chief of the Tonawanda band of Seneca Indians, and for forty years or more a resident, and exceeding twenty years a landowner, on the Tonawanda Indian reservation, in the town of Alabama, county of Genesee and state of New York.

The plaintiff's premises are briefly described as follows in the complaint: "It is bounded on the east by the lands of Jonathan Jemison, on the south by the West Shore Railroad, on the west by the lands of Erastus Printup, on the north by the center of the highway leading from Bascom to Akron and the lands of Joseph Charles and Anna Charles his wife."

The defendant is a domestic corporation organized some years before the transactions involved in this action, and has its principal office in the city of Buffalo, Erie county.

The complaint charges that prior to the commencement of

this action the defendant, its agents and servants, did unlawfully enter and without his authority upon said premises of the plaintiff, lying between the center of the aforesaid highway and the southerly side thereof, and did eject the plaintiff therefrom and dug holes in and erected telephone poles upon and stretched wires over said premises throughout the whole length thereof, from the easterly line to the westerly line of the same, and cut and trimmed various trees that the plaintiff or his ancestors or grantees had planted on said premises.

The complaint further alleges, after setting forth possession and occupancy on the part of the plaintiff, that the defendant unlawfully withholds the possession of said property to his damage of $500.00. The plaintiff also avers that he brings this action in accordance with the Laws of 1902, chapter 296, entitled "An act to amend the Indian Law in relation to the erection of poles and wires on the Tonawanda Reservation." It is also alleged that the plaintiff brings this action in his individual right and to right an individual wrong.

The defendant in its answer puts in issue the allegations of the complaint and sets up the following defenses, in substance : That in or about the year 1900 it obtained from the Tonawanda Nation of Seneca Indians the permission and right to erect the poles and stretch the wires and trim the trees, as alleged in the complaint, by a certain resolution adopted by the said Tonawanda Nation of Seneca Indians, paying therefor a valuable consideration ; that chapter 296 of the Laws of 1902 is unconstitutional and void in that it is violative of subdivision one of section ten of article one of the Constitution of the United States in that it impairs the obligation of contracts. It is also alleged that chapter 296 of the Laws of 1902 is unconstitutional and void in that it is violative of and in conflict with the statutes of the United States providing for the regulation of commerce with the Indian tribes, among others, section 2116 of the Revised Statutes of the United States, and chapter 832 of the Laws of the United States, passed in the year 1901, pursuant to the provisions of the Constitution of the United States, among other provisions

subdivision three of section eight of article one of said Constitution.

It is proper at the outset to dispose of the constitutional and statutory defenses interposed by the defendant. The suggestion that chapter 296 of the Laws of 1902 is in conflict with the Constitution and statutes of the United States ignores the history of the Seneca Indians and several other Indian tribes in the state of New York. That history dates back, so far as the Seneca tribe is concerned, to a time when two charters to their lands, among others, were granted; one by Charles the First of England to the colony of Massachusetts Bay and New England in 1628, and the second by Charles the Second to James, Duke of York, in 1664. After the Revolutionary war and the original thirteen states had adopted their Constitutions, the state of Massachusetts claimed these lands in western New York under the first charter named, and the state of New York claimed them under the second charter. Commissioners were appointed by the states of Massachusetts and New York and the result was, as announced in 1786, that the jurisdiction and sovereignty of these lands were found to be in the state of New York; that the state of Massachusetts retained the right to pre-empt these lands from the Indians and extinguish the Indian titles thereto.

It is unnecessary to trace this history for the next seventy-five years through the negotiations and transfers that resulted in the creation of the Ogden Land Company, the Holland Land Company and other purchases and sales of the Indian lands, many of which reflect little credit upon the transactions so far as the white men were concerned.

In 1857 the Tonawanda band of Seneca Indians negotiated a new treaty by which they surrendered the right to certain land in western Kansas, to which they had been practically exiled, and purchased of the surviving trustee of the Ogden Company 7,547 acres, comprising the present Tonawanda reservation, paying therefor twenty dollars an acre. By the terms of the treaty these lands were conveyed to the secretary of the interior of the United States in trust, and in February,

32

1863, the secretary of the interior conveyed these lands to Lucius Robinson, the then comptroller of the state of New York and his successors in office, in fee, in trust for the Tonawanda band of Seneca Indians, pursuant to an act of the legislature of the state designating the party to whom the conveyance was to be made in pursuance of the said treaty of 1857.

This historical question is dealt with to a great extent in the case of *Seneca Nation of Indians* v. *Christie* (126 N. Y. 122; affirmed, 162 U. S. 283). The state of New York exercises the exclusive sovereignty and jurisdiction over the Seneca Nation of Indians, and the case at bar consequently involves no Federal question. The Constitution and statutes of the United States apply to Indian lands in many jurisdictions outside of this state.

The defense interposed to the effect that the Laws of 1902, chapter 296, is unconstitutional as impairing the obligation of contracts, does not seem to have been seriously insisted upon at the trial of this action. Be that as it may, we hold that the law is a valid exercise of the legislative power.

This brings us to the consideration of the merits. The title of the plaintiff to the premises in question rests on the provisions of section 56 of the Indian Law and the laws and usages of the Seneca Nation to which reference is therein made. Section 56 provides, in part, as follows: "All lands on either the Allegany, Cattaraugus or Tonawanda Reservations, except such as have been allotted by the National Council, or lands on the Allegany and Cattaraugus Reservations, appropriated, cultivated and improved by an Indian or Indian family or the heirs thereof, in accordance with the laws and usages of the Seneca Nation, or lands on the Tonawanda Reservation, to which the possessors have become entitled in pursuance of law without an allotment, shall be held in common by the Seneca and Tonawanda Nations, respectively, and be subject to the control of the Council thereof." The laws and usages of the Seneca Nation were proved by plaintiff by evidence that is uncontradicted.

The plaintiff swore that he was fifty-one years of age and born and brought up on the reservation; that he had lived on the place he now occupies for twenty-two years, and on a portion of it for nearly his entire life; that he lives on the property described in the complaint; that his mother was a Tonawanda Indian and purchased land of the chiefs about 1859. It is stated by counsel on the record that before 1863 the Indians made no written records. Plaintiff testified "that the land was surveyed and laid out about that time. After my father's death the land was divided by my mother between myself and my brother and herself in three equal parts and the line was drawn east and west and the south third was given to me. * * * I am familiar with the Indian laws and customs on the Tonawanda Reservation and those of the Tonawanda Band of the Seneca Nation of Indians. I do know whether or not records were kept of allotments or sales previous to 1863." The plaintiff also testified as to having other portions of the land surveyed and building a house and erecting fences. The plaintiff further testified: "I have occupied all of it at least twenty-two years; nobody ever disputed my occupation; I have farmed it, occupied the whole of it as a farm openly so that my neighbors all knew it. My land has been recognized as mine by the other members of the Nation. My mother died seven years ago next July. She gave me the balance of the sixteen acres she owned. The consideration was she had lived with me; I supported her about twenty-five years."

The record contains other evidence of a like persuasive character, showing that the plaintiff's lands were allotted and come clearly within the exception contained in section 56 of the Indian Law already quoted. It is clear that the plaintiff cannot be treated as holding his lands without an allotment, as is urged by the appellant, and is not subject to the control of the council as to their disposition. There is a presumption of a grant of occupancy from long possession. (*Seneca Nation of Indians* v. *Lehly*, 55 Hun, 83.)

Chapter 296, Laws of 1902, is an act to amend the Indian

Law (§ 89) in relation to the erection of poles and wires in the Tonawanda Reservation. It deals with allotted and unallotted lands. As to the former, which alone are involved on this appeal, the statute provides that " Any company may erect poles and wires, and other necessary fixtures thereto, across the lands of the Seneca Indians on the Tonawanda Reservation, provided the company shall pay to the Indians to whom allotments have been made, and on whose premises telephone or telegraph poles for the purpose of supporting wires, have been or may hereafter be erected, damages therefor, in case of inability to agree thereon, to be ascertained in the manner provided in the condemnation law by commissioners to be appointed by the Supreme Court in the manner provided by said condemnation law."

It thus appears that the defendant, before erecting its poles and stretching its wires, was obliged to agree with the plaintiff, or failing in that to resort to condemnation proceedings. Instead of following this statutory mode of procedure it made application to the council of the Tonawanda Indians and secured its permit on the payment of thirty dollars. This procedure was irregular and unauthorized, and the permit worthless.

The question was raised as to whether the plaintiff's title ran to the center of the highway. Plaintiff proved by uncontradicted evidence that such was the fact. It was also proved by uncontroverted evidence that at the meeting of the council, when the permit was obtained by the defendant, its representative agreed to settle with individual landowners.

The plaintiff, however, failed to prove any damages, and the trial judge directed the jury to find a verdict for six cents damages. Judgment was entered upon this verdict in favor of the plaintiff for the possession of the real estate described in the complaint, for six cents damages for withholding the property, and his costs, $162.28. It was also adjudged that the plaintiff is the owner in fee and has the full Indian title as a member of the Tonawanda band of Seneca Indians to the property hereinafter described, subject to the easement of

the public therein for the purposes of travel. The Appellate Division affirmed the judgment, with $99.43 costs.

The judgment appealed from should be affirmed, with costs.

Cullen, Ch. J., Gray, O'Brien, Werner and Chase, JJ. concur; Hiscock, J. not sitting.

Judgment affirmed.