(62 Misc. Rep. 138.)

### TERRANCE v. CROWLEY.

(Supreme Court, Trial Term, Franklin County. January, 1909.)

**1. INDIANS (§ 10*)—LANDS—TITLE AND RIGHTS TO.**

Indian lands within reservations are not subject to the state laws respecting real estate, so long as the Indian title is not extinguished and the Indians maintain their tribal relations or remain under the protection and control of the state.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 10.*]

**2. INDIANS (§ 10*)—LANDS—RIGHT TO HOLD AND CONVEY.**

Indian Law (1 Heydecker's Gen. Laws, p. 250, c. 5) § 2, authorizing an Indian to take, hold, and convey real estate, extends only to lands outside of tribal lands, and does not apply to lands within an Indian reservation unpartitioned.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 10.*]

**3. INDIANS (§ 13*)—ALLOTMENT OR PARTITION.**

An allotment of land on the St. Regis reservation to an Indian, pursuant to Indian Law (1 Heydecker's Gen. Laws, p. 279, c. 5) § 102, is not the partition provided for by section 7, permitting a partition of tribal lands among the members of the tribe, to the end that they may hold the lands in severalty; and the Indian does not, under such an allotment, acquire title in fee simple, but it still remains in the state, and his only interest in the land allotted is the right of occupancy and use, and also, probably, the ownership of improvements.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 13.*]

**4. SALES (§ 62*)—BREACH.**

Where the transfer of a farm is an essential and material part of a contract for the sale of a stock of goods, and the court is without jurisdiction to enforce a conveyance of the farm, as it is a part of the St. Regis Indian reservation, the contract for the sale of the stock of goods cannot be enforced, and the seller held liable for a breach.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179; Dec. Dig. § 62.*]

**5. VENDOR AND PURCHASER (§ 125*)—ACTIONS—ACCOUNTING.**

Where a contract for the purchase of a stock of goods cannot be enforced, because involving the transfer of a farm which is a part of the St. Regis Indian reservation, the purchaser, having in good faith executed and delivered his deed and surrendered possession of the farm, with the improvements thereon, is entitled to an accounting, and to recover the net proceeds of the farm from the time the other party took possession, and to a return of the deed executed by him, and also to a redelivery of the possession of the farm.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 125.*]

Action by George Terrance against Michael J. Crowley. Finding for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

116 N.Y.S.—27

Kellas & Genaway, for plaintiff.
Moore & Berry, for defendant.

VAN KIRK, J.   This is an action to recover damages for the breach
of a contract for the purchase and sale of the goods in a store in
the town of Bombay, Franklin county.   The facts briefly are as fol-
lows:

George Terrance, the plaintiff, was the holder of papers purporting
to be deeds of a farm of land in the town of Bombay, Franklin coun-
ty, N. Y., which is within the limits of the St. Regis Indian reserva-
tion.  These deeds or papers were executed, one by Hattie White,
dated January 22, 1907; one by Mrs. Jennie Gray, widow of Thomas
Gray, deceased, dated January 15, 1907; and one by Maggie Gray,
of Hogansburgh, dated January 17, 1907.   Prior to the execution of
the deed by Hattie White, and on the 21st day of January, 1907, Peter
Gray conveyed all his right, title, and interest in and to said Thomas
Gray farm to Hattie White.   Maggie and Peter Gray were only chil-
dren of Thomas Gray.   The plaintiff and defendant met and had an
interview with reference to the purchase by George Terrance of the
stock of goods in the defendant's store in the town of Bombay.   Ter-
rance in substance told Crowley that he owned the Gray farm, and
that he would buy his stock of goods for $4,000, if Crowley would
take from the purchaser of the farm so much of the purchase price
of the goods as the farm would pay.   Mr. Crowley assented, and
saw Mr. Alex. White, who agreed to take the farm for the sum of
$3,300, giving two notes.   George Terrance executed a deed of the
farm to Alex. White; and Alex. White executed his notes, aggregat-
ing $3,300, delivered them to Mr. Crowley, and took over possession
of the deed.   Since that time Crowley, directly or through White,
has rented and received the proceeds of the said farm.   On August
1, 1907, a written agreement was made between Crowley and Ter-
rance with reference to the sale of the stock of goods and the matters
hereinbefore mentioned.   By this agreement George Terrance, the
party of the first part, agreed to purchase the goods for the sum of
$4,000, which goods were to be inventoried on the 1st day of No-
vember, 1908, and, at the inventory price, not to exceed the sum of
$4,000.   It was further agreed that the balance of the purchase price,
amounting to $700, should be paid by the party of the second part
in monthly payments of $100 each, beginning December 1, 1907.
While there is no mention in this contract of the sale of the farm, the
$700 balance of the purchase price is the difference between the $3,300
for which the farm was to be sold and the $4,000 for which the stock
of goods was to be purchased.   The deed from George Terrance to
Alex. White, in its recitals, contains the name of Maggie Terrance,
wife of George Terrance; but she has not signed the paper.   The
paper purports to be a quitclaim deed of the Thomas Gray farm.   Un-
der date of September 12, 1907, there is a paper, signed by Alex.
White, as follows:

"I hereby certify that I have paid Michael J. Crowley $3,300 in the month
of August for and in behalf of George Terrance as the purchase price of said
goods sold by said Crowley to said George Terrance."

Under date of October 30, 1907, there is a paper, signed by defendant, Crowley, in which he recites an agreement made September 16, 1907, to rescind the aforesaid written contract of August 1, 1907, and the agreement for the purchase of the store building made August 3, 1907, on Crowley's procuring the surrender to Terrance of the deed of Alex. White, dated August 3, 1907, and on payment to Terrance of $500 cash, and the value of the hay received by Crowley from the White farm of the value of $300, which, together with the interest, amounted in all to $805.87.

The plaintiff demands judgment that an accounting be had in this action by the defendant for the amount of goods, and the price thereof, sold by the defendant since the 1st day of August, 1907, and that the plaintiff recover that amount from the defendant; in addition, that he recover the sum of $3,300 paid by him to the defendant aforesaid, and the sum of $1,500 damages for the failure of the defendant to carry out and perform the contract. The defendant refused to perform the contract for the sale of the stock of goods, and this action was brought.

Alex. White now objects to the Terrance deed, claiming that it is not a good transfer: First, because the lands are not subject to individual sale, being lands within the St. Regis Indian reservation; and, second, because, if they are subject to sale and conveyance, the wife of George Terrance must sign the deed. White claims that he delivered the $3,300 in notes to Crowley conditionally, Crowley to hold the notes until a satisfactory deed was furnished, and that, when such deed was not furnished, he recovered the notes from Crowley and burned them, without consulting Terrance.

The transfer of the title of the Terrance farm is an essential part of the contract for the purchase and sale of the stock of goods; so it is necessary first to inquire whether or not the title to this farm could be transferred, and, if it could be, whether or not the wife of George Terrance has an inchoate right of dower in the farm, so that she must join in the deed in order to give a clear title. I understand the general rule to be that, so long as the Indian title of lands is not extinguished, and the Indians maintain their tribal relations or remain under the protection and control of the state, the Indian lands within the reservations are not subject to the state laws respecting real estate; that lands within a reservation, belonging to the Indians who are members of an organized tribe, descend according to the laws and customs of the tribe, and not according to the laws of the state in which the lands lie; but lands which have been allotted in severalty to Indians, who have acquired title thereof in fee simple, descend according to the laws of the state. Love v. Pamplin (C. C.) 21 Fed. 755; Krause v. Means, 12 Kan. 335; Brown v. Steele, 23 Kan. 672; O'Brien v. Bugbee, 46 Kan. 1, 26 Pac. 428; Telford v. Barney, 1 G. Greene (Iowa) 575; Wright v. Marsh, 2 G. Greene (Iowa) 94.

The Constitution of the state of New York (article 1, § 15), provides:

"No purchase or contract for the sale of lands in this state, made since the fourteenth day of October, seventeen hundred and seventy-five, or which may

hereafter be made of or with the Indians, shall be valid, unless made under the authority, and with the consent of the Legislature."

In Goodell v. Jackson, 20 Johns. 697, 11 Am. Dec. 351, and Lee v. Glover, 8 Cow. 189, it is held that, while the word "Indians" is used in the plural, it includes the purchase from a single Indian. The Indian law, which gives to the individual the right to hold and convey real estate, does not apply to lands within an Indian reservation unpartitioned; and consequently that provision of the Constitution would apply. In Lee v. Glover, 8 Cow. 189, it is held (referring to Goodell v. Jackson, 20 Johns. 693, 11 Am. Dec. 351), that, by the Constitution and statute laws of this state, no white persons can purchase any title to land from any one or more Indians, either individually or collectively, without authority of the Legislature; that it is immaterial from what source the property proceeded, or whether it is owned by tribes, families, or individuals; that, if it be Indian property in land, it is protected by our Constitution and laws. Neither the spirit nor terms of the constitutional provisions are confined to Indians residing with their tribe. After it has been decided that these provisions extend to the individual property of a single Indian, acquired by purchase, or as the reward of his military services, they must be held to apply, whether the Indian resides within the body of his nation or separate and apart from them. It is analogous to the disability of infants to contract in not depending on the actual capacity to protect his own rights.

These decisions do not state the present law (except as to lands within the reservation), because the Legislature has authorized certain transfers. Under Indian Law, art. 1, § 2, it is provided that a native Indian may take, hold, and convey real property the same as a citizen; and, upon becoming a freeholder to the value of $100, he shall be subject to taxation. This provision, however, as above stated, refers only to lands held in fee simple by an Indian outside of the tribal lands. Under the general Indian law (article 1, § 6) it is provided that no taxes shall be assessed for any purpose whatever upon any Indian reservation in this state, so long as the land in such reservation shall remain the property of the nation, tribe, or band occupying the same. By the Indian law (article 7, § 106), which refers to the St. Regis tribe, and the lands in controversy, the following is provided:

"The chiefs of such tribe· in council assembled may hear and determine * * * controversies involving the title·to property between individual Indians residing on such reservation."

The lands of the St. Regis are in a reservation and still belong to the state of New York. Strong v. Waterman, 11 Paige, 607. The Indian law (1 Heydecker's Gen. Laws, p. 252, c. 5, art. 1, § 7) provides for a partition of tribal lands among the members of the tribe, to the end that the members of the tribe may hold the lands in severalty. The partition shall be made by commissioners appointed by the Indian nation whose lands are to be distributed, subject to the approval of the Commissioners of the Land Office. Then certain restrictions are fixed, relieving the land from the lien of any incumbrance by mortgage, judgment, or otherwise, and depriving of the right to convey for a pe-

riod of 20 years from the recording of the partition deed. This provides for a general partition (not an allotment as provided for in the statute) among the members of the tribe, and it does not appear that any such partition of the St. Regis reservation lands has ever been made. These lands are, in part at least, held under allotments (not under a partition) made by the chiefs; but they are tribal lands, and the title is still in the state of New York.

Article 7 of the general Indian law refers to the St. Regis tribe, and section 102 (page 279) provides for the allotment of the lands to any Indian or an Indian family. This allotment is not the partition above mentioned. The individuals of the St. Regis tribe, therefore, do not own title in fee simple, and the only interest of an Indian in lands allotted to him is the right of occupancy and the use of the lands; also, probably, the ownership of the improvements put upon the land by the occupant. Strong v. Waterman, supra. The lands, therefore, cannot be conveyed by an individual Indian, and the wife of an Indian has not an inchoate dower right in the real estate. The deed was not a valid conveyance of the land, and it was not necessary for Mrs. Terrance to sign the deed.

By article 1, § 13, of the Indian law, it is provided that:

"The Commissioners of the Land Office, with the approval of the Governor, shall hear and determine * * * all questions which may arise between the various parties of such tribe or nation in relation to any of their lands or the avails thereof, and shall make such treaties, contracts and arrangements with any such nation, tribe or band or individuals who have any claims upon any land in this state or any money belonging to them under the control of the state, or for the purchase of any portion of such lands as they may deem just and proper."

There never having been any partition of the tribal lands, as provided for in article 1, § 7, any question arising between the members of a tribe in relation to any of their land is to be heard by the chiefs of their tribes, or by the Commissioners of the Land Office, and not by the courts. This conveyance in question purports to be a conveyance of the farm, and must be treated as if it were an attempt to convey the farm, and not merely a transfer of the right to occupy the farm with improvements thereon. The case of Jimeson v. Pierce, 78 App. Div. 9, 79 N. Y. Supp. 3, I do not think is applicable to this case, because there has been no general partition of the tribal lands among the members of the tribe of St. Regis Indians as provided for in section 7 of the Indian law.

Although the written contract of August 1st does not specifically mention the agreement as to the sale of the farm, the evidence discloses that the purchase price of the farm was to furnish the greater part of the consideration for the stock of goods; and the reference in the contract of August 1st to the balance of the purchase price, $700, is also a reference to the sale of the farm for $3,300. The contract, therefore, with reference to the sale of the farm, is an essential and material part of the contract, and of the consideration for that contract, for the purchase and sale of the stock of goods; and, the court having no jurisdiction to enforce a contract to convey the farm, it seems necessary to hold that the contract for the sale of the stock of goods cannot be en-

forced, and the defendant cannot be held liable for breach of the contract to sell the stock of goods. It is admitted, however, that the defendant has received from this farm a quantity of hay of the value of about $500, and has a balance of about $300. While the plaintiff had entered into the contract in good faith, the defendant has received property which belongs to this plaintiff. The court cannot fix the amount or the value of the personal property wrongfully received by the defendant, because it is not informed as to the disbursements and expenses in connection with harvesting the crops. It also appears that some rentals have been received from the premises.

The plaintiff is entitled to an accounting, and is entitled to recover the net proceeds of the property from the time Crowley or White took possession. The plaintiff is entitled to the paper purporting to be a quitclaim deed from George Terrance to Alex. White. The conveyances above recited to George Terrance, so far as we are now concerned, may be considered as transfers to Terrance of the right to occupy and as a conveyance of the improvements, betterments, and personal property upon the farm; and plaintiff is entitled to the possession of the farm.

While the contract for the purchase of the stock of goods cannot be enforced, because it involves the transfer of the farm, a legal transfer of which Terrance cannot make, the contract for the sale of the stock of goods was one into which the parties could enter, and it is to be presumed that it was entered upon in good faith. Acting under this contract, the defendant Crowley has allowed White to take back his notes for $3,300, without delivering back the Terrance deed, and without procuring for Terrance the possession of the farm. The evidence shows that the transaction concerning the sale of the farm was between Terrance, Crowley, and White. Terrance having in good faith executed and delivered his deed, and surrendered up the possession of the farm with the improvements thereon, and Crowley having refused to perform his contract, and the possession of the farm not having been restored by Crowley to Terrance, the plaintiff has suffered damage to the extent of the value of the use of the farm, the right to occupy it, and the improvements thereon, which I find to be the sum of $3,300. In addition to an accounting as to the proceeds of the farm, the plaintiff is entitled to a judgment requiring Crowley to deliver to him the possession of this farm, or, in case of failure so to do, that the plaintiff have judgment on that account in the sum of $3,300.

A decision may be prepared in accordance with the foregoing, and the judgment may provide for a reference to take and state the account and determine the amount that the plaintiff shall recover against the defendant. If the parties cannot agree upon the amount due, a referee will be named by the court, unless the parties agree upon such referee.

Judgment accordingly.