(88 Misc. Rep. 209)

RESERVATION GAS CO. et al. v. SNYDER et al.

(Supreme Court, Equity Term, Erie County. December 7, 1914.)

INDIANS (§ 16*)—TITLE TO LANDS—CONGRESSIONAL LEGISLATION.

A Seneca Indian, in possession of lands on the Cattaraugus Reservation which had been cultivated and improved and occupied by him and his Indian predecessors for upwards of 40 years, has no title to the oil and gas in the lands, as against the holder of a lease granted by the council of the Seneca Nation and ratified by Act Cong. Feb. 21, 1911, c. 143, 36 Stat. 927, and purporting to convey the exclusive right to operate for oil and gas within the reservation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

Action for an injunction by the Reservation Gas Company and another against John Snyder and others. Judgment for plaintiffs.

Carey D. Davie and George W. Cole, both of Salamanca, for plaintiffs.

Dowd & Quigley, of Salamanca, for defendant Snyder.

POUND, J. This is an action to restrain the defendants from drilling a gas well on lands claimed by the defendant John Snyder, a Seneca Indian, residing upon the Cattaraugus Reservation, which lands have

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been cultivated and improved and occupied by him and his Indian predecessors for upwards of 40 years. He claims the right to use said premises exclusively for all purposes, including the production of oil and gas, as if he were the owner thereof in fee simple absolute.

The plaintiffs hold a lease granted by the Council of the Seneca Nation in August, 1910, to Edward Bolard, which purports to convey the *exclusive* right to operate for oil and gas within the boundaries of the Cattaraugus Reservation. This lease was duly ratified by act of Congress, except that the lessee was required to execute and file a bond, in the penalty of $20,000, conditioned upon the faithful performance of all the conditions of the lease. Act 61st Cong. c. 143, 36 Stat. 927.

No controversy arises in regard to full compliance on the part of the plaintiffs and their predecessors in interest with the terms of the lease and the act of Congress. Operations have been begun thereunder and large sums of money expended. Productive gas wells are now in operation, and the monopoly is a valuable one, if valid. Therefore they seek to restrain Snyder from operating on his own account in competition with them. Snyder, as has been said, maintains that neither the Council of the Seneca Nation, nor the Congress of the United States, nor any other power, can deprive him of the right to drill for gas and oil on the premises in question without his consent.

"The national government, by its treaties and congressional acts, has dealt with the Indians in their tribal capacity. The title of the land on the various Indian reservations has been treated as belonging to the tribe in possession, and whenever the individual Indian has been recognized in his possession or ownership of the land it has been to subserve some ulterior, paramount purpose." Spring, J., in Shongo v. Miller, 45 App. Div. 339, 61 N. Y. Supp. 281, affirmed 169 N. Y. 586, 62 N. E. 1100.

It seems that, among the early Iroquois, instances of individual ownership or possession of land were rare. 52 Jesuit Relations, 165, says: "Here and there we find isolated women, each cultivating her little plot of ground." Mainly through the efforts of the Society of Friends, beginning in the year 1798, the Seneca Indians on the Allegany river were induced to clear land, inclose lots, and raise crops. The development from the hunting and fishing stage of civilization progressed rapidly. The common land on the reservation was cleared by the industry of individual Indians, so that little available unclaimed land remains. We find a farming community, where lands are occupied in severalty. Good houses, barns, and other buildings and well-tilled farms are not uncommon. Lands thus occupied are sold and devised to other Indians, but not to strangers. The individual right of occupancy is upheld by the courts, although title depends upon improvements and peaceable possession, rather than upon record evidence.

What rights do the individual Indians have in lands thus held by him? Is he a mere occupant for agricultural purposes only, or is he the owner in fee of the land, who cannot be deprived of his right to the oil and gas beneath the surface without just compensation? Which is superior, Snyder's Indian title or plaintiffs' lease approved by act of Congress?

The Court of Appeals held in Jemison v. Bell Telephone Co., 186 N. Y. 493, 79 N. E. 728, that where a member of the Tonawanda Nation of Seneca Indians has occupied and has been in undisputed possession of lands within the reservation, purchased by his mother from the Chiefs of the Nation in 1859, for a period of more than 22 years, the presumption is controlling that such occupant holds the lands under an allotment within the meaning of section 56 (now section 55) of the Indian Law of the state of New York, and he *must be deemed to be the owner in fee of the land* in question, and as such entitled to compensation for any taking thereof for telephone purposes, notwithstanding the fact that the company had obtained permission from the Council of the Nation to erect its poles and wires across the lands of the reservation. Edward T. Bartlett, J., writing the opinion of the court, says:

"The state of New York exercises the exclusive sovereignty and jurisdiction over the Seneca Nation of Indians, and the case at bar consequently involves no federal question. The Constitution and statutes of the United States apply to Indian lands in many jurisdictions outside of this state."

At least no act of Congress was involved in the case, but beyond this the statement of the learned judge is probably dicta, for in the later case of People ex rel. Cusick v. Daly, 212 N. Y. 183, 105 N. E. 1048, the act of Congress, now section 328 of the United States Criminal Code,[1] vesting in the courts of the United States exclusive jurisdiction over certain crimes committed on Indian reservations, was upheld as well to New York as to the Western Indians, and it was held that there is no difference as to the application of this rule between the Indians whose reservations are the direct gift of the federal government and those whose reservations have been derived from the state or other sources, and Werner, J., writing the opinion of the court, says:

"Congress has always asserted and exercised the right to legislate *in all* Indian affairs, and its power to do so has been upheld by the Supreme Court. * * * When Congress does act, the power of the state must yield to the paramount authority of the federal government."

The defendants cannot succeed herein unless this court holds that the act of Congress legalizing the plaintiffs' lease is unconstitutional or inapplicable. The lease is meaningless and without value unless it covers *all* lands, not merely unclaimed lands, on the reservation, and this court should not hold an act of Congress void for unconstitutionality unless it is so plainly so as to require no discussion.

Congress has power to regulate commerce with the Indian tribes. Const. U. S. art. 1, § 8. In the exercise of this power, so broadly has it been construed, it may prohibit the sale of liquor to *an individual Indian* under charge of a United States Indian agent *anywhere within the United States*. U. S. v. Holliday, 3 Wall. 407, 18 L. Ed. 182. In the opinion of the court it is said:

"Neither the Constitution of the state nor any act of its Legislature, however formal or solemn, whatever rights it may confer on those Indians or withhold from them, can withdraw them from the influence of an act of Congress which that body has the constitutional right to pass concerning them. Any other doctrine would make the legislation of the state the supreme

[1] U. S. Comp. St. 1913, § 10502.

law of the land, instead of the Constitution of the United States and the laws and treaties made in pursuance thereof."

Defendants, then, must rely solely upon Snyder's customary title. But that title has never been ratified nor recognized by Congress. Plaintiffs' lease has been so ratified, and it must control. We need go no further than to say that, even though the customary title by occupancy vests in the individual Indian for agricultural purposes, Congress refuses to recognize the right of the individual to acquire oil and gas rights by such occupancy, but recognizes the authority of the Indian Council to dispose of such rights, with congressional approval, for the benefit of the nation as a whole.

Judgment for plaintiffs accordingly.