Charles T. Major, J.
This is a claim to recover damages for the appropriation of an easement over quarry lands leased by claimant within the Onondaga Indian Reservation.
The appropriation was made under section 30 of the Highway Law for the alteration and reconstruction of the Syracuse-Lafayette State Highway No. 5365. Appropriation maps were filed in Onondaga County Clerk’s office on December 5,1952, and served on claimant on January 12,1953. The claim which was filed on December 2, 1954, has not been assigned nor submitted to any other court or tribunal for audit or determination. The court viewed the premises. Reference is made to the appropriation maps so filed for a description thereof, without unnecessary repetition herein,
*1050 The claim includes the following parcels, viz:

Map Numbers

42, 43, 44, 45

46, 47, 48, 49
50, 51, 52, 53
62, 64, 65-R-l
66-R-l, 67-R-l, 68-R-l
69-R-l, 70, 71, 72
73, 74, 75, 76, 77

Parcels Numbers

70, 71, ' 72, 73, 74;
75, 76, 77, 78;
79, 91, 80, 81, 82, 90, 83;
94, 96, 97;
98, 104, 99, 100, 101, 102, 105;
103, 106, 107, 108, 109, 110;
111, 112, 113, 114,. 115;
but, at the end of the trial, claimant abandoned its claim for appropriations included in the foregoing maps and parcels, except Map Number 52, Parcel Number 90.
On the trial, claimant narrowed the considerations of damage to:
Item 1. Damage caused by its inability to quarry the stone on Parcel No. 90, Map No. 52, due to its proximity to the newly-constructed highway and service road connected therewith. The area so affected averages 1,000 feet long, 74 feet wide and 50 feet deep, and was estimated to contain 208,330 tons, valued at 40 cents a ton in the ground.
Item 2. For the value of the stone used by the State for fill in its construction work and taken from within the appropriated right of way. The quantity was agreed upon as 37,300 cubic yards, and the value as $2,800, in the event the court found the State liable therefor.
Richard E. Jones, president of the claimant corporation, was the only witness on the trial.
A lease was entered into between the Indian Council Chiefs and claimant under date of October 24, 1924, for 37 years from January 1, 1925 and expiring December 31, 1961, leaving nine years and 26 days to run from the date of the appropriation. This lease provides for the rental of “ all of the limestone quarries and deposits on the Onondaga Indian Reservation with full privilege of working same for building stone and cut stone, with right of ingress and egress to and from any part of said quarries, with right to place materials for convenient loading on level ground close to State Road; the right and privilege of erecting such buildings, derricks and machinery in and about said quarries as may be desired ’ ’. It also contains a provision that at its expiration, the lessee or its assigns, “ shall have the privilege of renewing this lease for a like period of 37 years or less at its option
*1051 The lease, however, does not cover the entire reservation, according to the testimony of Mr. Jones. It was understood at the time the agreement was made, that only the portion commonly called the quarries was included and the area was pointed out to him by the chiefs. Mr. Jones described it as being “ U ” shape, bounded by a creek on the north and south sides, extending easterly to the easterly edge of the reservation at the Turnpike Road.
The State questioned the legality of this lease without giving any specific reasons. The sincerity of such objection appears to be weak inasmuch as the Attorney-General rendered an opinion (1947 Atty. Gen. 240), cited in open court, stating upon the facts presented that the lease was valid. The State presented no new facts on this point to the court at the trial. The Indian Chiefs, in settling their claim against the State inserted a reservation in their release, which excepted the claim herein from such settlement. So, it appears that all parties considered the lease in effect. For the purposes herein and because of the final result of this claim, the court will consider it likewise. However, this is. not to be construed as an absolute finding that the lease was entirely legal in all things, particularly in the matter of its term, renewal clause, abandonment, or the authority of the Indian agent.
In Dixon v. State of New York (4 Misc 2d 76) this court decided on September 29,1956 that Parcel No. 90 on Map No. 52, was occupied by Thomas Dixon to whom it had been allotted under the tribal law, and made an award to him because of the State’s appropriation. The State also contends that the chiefs could not lease the quarry within Dixon’s allotted plot. The court rejects such contention. The State has failed to offer any evidence as to which was made first — the lease or the allotment. In any event, Dixon’s allotment included only the right to occupy and use the surface thereof as a life possessor with no interest or control whatever of the stone or other minerals below the surface.
The State does not recognize the right of an individual Indian to stone below the surface, but it does recognize the right of the Onondaga Indian Tribe as a whole, to such stone. Provision has been made under section 24 of the Indian Law for the quarrying and sale thereof for the benefit of such Indians. (Matter of Parker, 227 App. Div. 107.) This is done by written contract signed by a majority of the chiefs of the tribe and approved by the tribe’s Indian agent.
Where the State does not own the fee, it does not acquire the underlying mineral stone by taking an easement, but, in the con *1052 struction, reconstruction, maintenance and repair of the highway within the easement acquired, it has the right to take out and use the stone and other material within its right of way. (Town of Clarendon v. Medina Quarry Co., 102 App. Div. 217; Dygert s. Schenck, 23 Wend. 446; Jackson v. Hathaway, 15 Johns. 447.) Under such circumstances, the remaining stone may be removed from under the highway after completion by the parties entitled thereto, provided the highway is not deprived of its needed support. (Dean v. Carroll, 143 N. Y. S. 12.)
The fee of the reservation is owned by the State (George v. Pierce, 85 Misc. 105), subject to the possession thereof as common property of the Onondaga Indian Tribe during its existence. The Indians are wards of the State. The Indians and the reservation are subject to treaties and the Indian Law. The tribal custom of delegating plots of land to individual Indians for life occupancy still prevails. No partition has ever been made by the Onondagas under section 7 of the Indian Law. (Andrews v. State of New York, 192 Misc. 429, affd. 276 App. Div. 814; George v. Pierce, supra.)
The lease herein did not transfer the land, but gave to claimant an incorporeal hereditament, a right to quarry and take stone from the area involved. This stone became the property of claimant only upon its actual severance. There can be no property in rock, and the title thereto cannot be divested or acquired until it has been taken from the earth. (Shepherd v. McCalmont Oil Co., 38 Hun 37; Funk v. Haldeman, 53 Pa. 229; Dark v. Johnston, 55 Pa. 164; Colonna v. State of New York, 224 App. Div. 173; Genet v. President etc., Delaware & Hudson Canal Co., 136 N.Y. 593.)
The material quarried and removed by claimant during the term of its lease belonged to it, but what it did not quarry out and sever from the land remained the property of the owner of the fee. (Baker v. Hart, 123 N. Y. 470 and cases cited, p. 471.) While the fee title to the land herein was in the State, subject to the rights and interest therein given to the Onondaga Indian Tribe by the State, and the stone was neither cut nor quarried, the claimant’s incorporeal hereditament was infringed upon by the State extending in width its original right of way so as to prevent claimant from cutting, quarrying and removing a small segment of stone should the necessity require it. This right, easement or incorporeal hereditament is a property right for which claimant is entitled to compensation for such damage as it in fact sustained.
The claimant presented two alternate measures of damage. (1) The value of the stone in the ground. The State objected to *1053 this as not the proper measure of damages, and moved to strike out such testimony. Decision was reserved thereon. The objection is sustained and the State’s motion is granted. (2) The difference in value between the leasehold interest before the appropriation and the value after. Claimant’s evidence is rather confusing as to the measure and amount of damages. The sole witness testified that the $20,000 represents (a) value of that portion of the land taken and that ‘ ‘ not able to use by reason of its proximity to the road (b) the main reason for the $20,000 value is because of claimant’s inability to blast within 75 feet of the service road; (c) the amount claimant would lose by reason of not being able to quarry stone in the open quarry; and (d) the value of the stone in the land. The court cannot accept this appraisal of claimant’s loss under the circumstances.
The damages to be awarded should be the amount of loss. Various measures of damages are used under different conditions, but no fixed rule, unvarying according to circumstances, is available. A quarry lease such as this one is not the subject of barter and sale in any general market and, obviously, its value cannot be determined as easily or readily as other lands. Claimant’s lease was based on quarrying operations with the privilege of erecting the desired buildings, machinery and equipment for that purpose and to load materials at convenient places. This quarry had been opened and worked prior to this lease. Pursuant to the terms of its lease, claimant was to pay the chiefs $1 per year for the first nine years, and $400 per year thereafter. After January 1, 1934, claimant was to pay a royalty of 5% of sale price of all crushed stone hauled or shipped from said property, only if it erected a stone crusher thereon. While claimant corporation is still in existence, nevertheless, it is not operating this quarry. It has not quarried or processed stone from it in many years. Its activities at the time of the appropriation were more as salesman and broker of stone to contractors for fill and rip-rap. The stone sold was from the material about the premises quarried and left by those who worked the same before claimant. In many instances, contractors were permitted by claimant to enter the quarries and remove stone ona“ quarry your own ’ ’ basis on payment of 40 cents to 75 cents per ton in the earth. Machinery and equipment of the claimant were all moved to Grouverneur about 1936 and never replaced. In 1930 and 1936, the State leased the quarry from claimant, and furnished and installed its own crushers and other machinery. The Works Progress Administration also used it in the thirties. If during the term of claimant’s lease, all the other comparable stone in the quarries should be removed, the claimant could lose the value of *1054 what the State appropriated. (Baker v. Hart, 123 N.Y. 470, supra.) This was not the fact. Plenty of stone, including the marble-type referred to in the testimony, remained for many years to come. Much more remained in other parts than claimant could quarry and remove. The claimant, therefore, lost no stone which it was entitled to have, because enough remained to more than fully satisfy its entire right. Mr. Jones also said his estimate of loss because of this appropriation was based on his testimony of the value of the stone in the ground and his experience. This testimony was filled with speculation and conjecture. The burden of proof is on the claimant. It failed to prove any damage. It is the opinion of the court that claimant is entitled only to nominal damages, and it is, therefore, awarded the sum of $1.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.