TERRANCE v. GRAY et al.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. INDIANS ☞27—JURISDICTION OF STATE COURTS.

The state courts have jurisdiction of an action of ejectment between Indians to recover lands on an Indian reservation within the state.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20; Dec. Dig. ☞27.]

2. INDIANS ☞13, 15—LANDS—ALLOTMENT.

Indian Law (Consol. Laws, c. 26) § 2, providing that a native Indian may take, hold, and convey real property the same as a citizen, relates only to the capacity of the Indian to take, and has no bearing upon the right of the tribe to convey or allot lands of the reservation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 30, 34, 37–44; Dec. Dig. ☞13, 15.]

3. EVIDENCE ☞36—JUDICIAL NOTICE—ALLOTMENT OF INDIAN LANDS.

Where, in a suit involving Indian lands, there is nothing in the record to show that allotment was made of the lands by the nation owning and occupying them as common property, as contemplated by Indian Law, § 7, the court will take judicial notice of the fact that the tribe continues to hold its lands in common.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 25; Dec. Dig. ☞36.]

4. INDIANS ☞13—LANDS—ALLOTMENT.

Indian Law, § 7, permitting a nation or tribe which owns and occupies land as common property, by the act of its Indian government, to divide the lands into lots, and to distribute and partition it, does not contemplate turning over a certain lot to a certain Indian, the tribe retaining the rest, but requires a general partition, and hence does not apply to an allotment of lands to an Indian for cultivation and use only.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ☞13.]

5. INDIANS ☞13—LANDS—ALLOTMENT.

Indian Law, § 102, provided that the chiefs of the St. Regis Indians should allot to any Indian not possessing land, who made application, a reasonable and just portion of the tribal lands, and that the clerk

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

should enter in a book for that purpose every allotment of tribal lands to any Indian. Section 103 permits cutting of timber with the consent of the tribal chiefs by any Indian in good faith for cultivation purposes. Section 104 prohibits the cutting or destroying of timber without the consent of the chiefs. *Held* that, under such sections, the allotment of the land does not convey a fee to the Indian to whom it is allotted, but entitles him only to the possession and use of the land allotted to him.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ☞13.]

6. INDIANS ☞13—LANDS—ALLOTMENT—SECOND ALLOTMENT.
Where, after the death of an Indian to whom land had been allotted, plaintiff for a consideration secured assignments of the interests of his heirs in the land, and the chiefs of the tribe allotted to him the land by an instrument providing: "This is to certify that we have located and confirm the title of George Terrance is without dispute. The said land is known as the Thomas Gray farm, described on page 36 of the Land Register Book. We now subscribe our names"—the certificate was a sufficient compliance with Indian Law, § 102, providing for the allotment of lands to Indians.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. ☞13.]

7. INDIANS ☞15—LANDS—RIGHT TO POSSESSION.
Where heirs of an Indian allottee conveyed their interests in lands to plaintiff, and thereafter in his absence forcibly entered into possession of the land, the plaintiff could as against them recover possession, by virtue of his former possession and the manner in which they acquired it from him.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

8. INDIANS ☞15—LANDS—ALLOTMENT—EFFECT.
Where heirs of a deceased Indian allottee assigned their interest in the lands of the allottee to the plaintiff, and thereafter the chiefs of the tribe reallotted it to the plaintiff, such heirs could not dispute the plaintiff's rights to the land.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

9. INDIANS ☞15—LANDS—RIGHT TO POSSESSION.
Where heirs of a deceased Indian allottee received a consideration of $1,400 for their interests in the lands allotted, though the land was in fact worth $4,000, the consideration was reasonable, in view of the fact that the allotment, did not convey a fee, but only the use and possession.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ☞15.]

Appeal from Trial Term, Franklin County.

Action by George Terrance against Peter Gray and others. From a judgment for plaintiff, and an order denying defendants' motion for new trial upon the minutes, defendants appeal. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Moore & Cooney, of Malone (Robert M. Moore, of Malone, of counsel), for appellants.

Kellas, Genaway & Kellas, of Malone (Le Roy M. Kellas, of Malone, of counsel), for respondent.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JOHN M. KELLOGG, P. J. [1] This action of ejectment is between St. Regis Indians, but the state courts may determine it. Terrance v. Gray, 165 App. Div. 636, 151 N. Y. Supp. 136. The questions of fact have been settled by the jury, and the case is finally submitted to us as involving two principal questions: (1) The title of the plaintiff to the premises under the Indian Law; and (2) the effect, if any, of the judgment in Terrance v. Gray, above, which was an action in replevin, brought to recover crops growing upon the farm after the alleged conveyances to the plaintiff.

[2] Under section 2 of the Indian Law a native Indian may take, hold, and convey real property the same as a citizen. This relates to the capacity of the Indian to take, and has no bearing upon the right of the tribe to convey or allot lands of the reservation.

[3] Section 7 of the Indian Law permits a nation or tribe which owns and occupies land as common property of the nation or tribe, by the act of its Indian government, to divide the land into lots, and to distribute and partition the same, quantity and quality relatively considered, among the individuals and families of such nation, tribe, or band, so that the same may be held in severalty and in fee simple according to the laws of this state. There is nothing in the record to indicate that the St. Regis Indians in the state have divided their common property among the members of the tribe in severalty, and the court will take judicial notice of the fact that the tribe continues to hold its lands in common, and that the partition permitted by this section has not taken place.

[4] This provision does not contemplate turning over a certain lot to a certain individual, the tribe retaining the rest, but means the general division among the members of the tribe of the property which before that had been held in common. The provision of section 7 that the lands thus partitioned shall be inalienable for 20 years, but may be partitioned among the heirs of a grantee who dies, does not therefore apply to this case.

[5] We now come to the consideration of section 102 of the Indian Law, which relates to the St. Regis tribe, and by it the chiefs or head men of the nation in the county of Franklin—

"shall allot and set apart for any Indian or Indian family, making application and not possessing land, so much of the tribal lands as they shall deem reasonable and just, and no tribal lands shall be appropriated by any Indian to his own use without such consent and allotment. The clerk shall enter in a book kept for that purpose every allotment of tribal lands set apart for any Indian or Indian family, and the part thereof from which such Indian or family may sell timber or trees, or the part he is permitted to clear for the purpose of cultivation."

Section 103 permits an Indian who has lands so allotted to him, with the consent of the chiefs, entered in the clerk's book, to sell for his own benefit any timber or trees on that portion of such lands which he shall occupy and in good faith clear for the purpose of cultivation. Section 104 prohibits any Indian from cutting or destroying timber or trees on any of the timber lands of such nation without the consent of the chiefs. There is nothing in the act to indicate that after the land is allotted pursuant to this section it ceases to be tribal

lands. The fact that the clerk is to enter upon the book what part of the land the Indian may sell timber or trees from, and the parts that he is to be permitted to clear for cultivation, is important. This control of the land after the allotment indicates quite clearly that it remains tribal lands, and is set apart simply for the use of the Indian. The allotment does not make the Indian the owner of the fee; it entitles him to the possession and the use of the land allotted to him.

[6] Thomas Gray, to whom the farm was allotted, died, having been killed by his son, Peter Gray. Peter Gray was convicted of manslaughter in the first degree for the offense, which indicates that the patricide was not the offense of Peter's mind, but resulted from the heat of passion, and that he had no intent to cause death. Thomas Gray left him surviving his children, Peter Gray and Hattie White, the wife of the defendant Alexander White. He also left a widow, Jennie Gray. Peter Gray, while in prison and facing a trial for murder, conveyed his interest in the property to his sister, Hattie White, and thereafter she conveyed her interest to the plaintiff for $1,-200. The plaintiff also paid the widow of Thomas Gray $150 and the wife of Peter Gray $50 for a transfer of their interest in the property. Thereafter the chiefs of the tribe made an instrument, attested by the clerk of the tribe, as follows:

"This is to certify that we have located and confirmed the title of George Terrance is without dispute. The said land is known as the Thomas Gray farm, described on page 36 of the Land Register Book. We now subscribe our names."

There is nothing to indicate that the plaintiff at the time possessed other land. I think we may assume that he was capable of having an allotment made to him. The certificate seems fairly to comply with section 102, and entitles the plaintiff to the use and occupancy of the land. The chiefs evidently considered that, having obtained a conveyance of all the interests of the heirs of Thomas Gray in the property, he was entitled to its use, and accordingly they allotted it to him.

[7, 8] The verdict of the jury establishes that the widow and heirs of Thomas Gray have conveyed to the plaintiff any interest they had in the farm. The conveyances to the plaintiff were made in January, 1907, and from that time until May, 1913, he was in undisputed possession of the farm. In the summer of 1913 Peter Gray and Alexander White forcibly entered into possession during the plaintiff's absence. In Terrence v. Gray, above, the plaintiff recovered in replevin the crops grown upon the farm that year. This action was brought August 15, 1914. The heirs of Thomas Gray having divested themselves of all interest in the farm, as between them and the plaintiff, he may recover it by virtue of his former possession and the manner in which they acquired the possession from him. But we have seen that, after the heirs of Thomas Gray conveyed their interest in the farm, it was allotted by the chiefs of the tribe to the plaintiff; the defendants are not in position to dispute the rights of the plaintiff under such allotment and the conveyances from them.

[9] It is urged that the property cost the plaintiff but $1,400 and was in fact worth $4,000. But if we are right in assuming that the

property was only allotted to Thomas Gray for use, and that he was not the fee owner thereof, perhaps the sum paid by the plaintiff for the interest he acquired in the property was not unreasonable.

It is unnecessary to consider whether or not Peter Gray could, by murdering his father, make himself the heir to his property. In any event, the plaintiff stands as grantee of whatever interest the heirs and widow of Thomas Gray had in the property and were capable of conveying. It is also unnecessary further to consider the effect of the judgment in the replevin case.

Upon full consideration of the case, we find no reason for disturbing the judgment. The judgment and order should therefore be affirmed, with costs. All concur.