MYRON B. THURSTON, Plaintiff, *v.* STELLA MILLER and Another, Defendants.

Supreme Court, Oneida County, June, 1930.

*E. J. Brown* [*R. H. Woolver* of counsel], for the plaintiff.

*Stanley Bliss*, for the defendants.

CHENEY, J.   Originally this action was in the form of a summary proceeding to obtain the possession of real property, but the court having held that the action would not lie in that form, by amendment of the pleadings it was converted into an action in ejectment. By stipulation the case was placed upon the calendar of the Special Term, and when reached for trial, a trial by jury was waived and the case submitted to the court upon the evidence taken upon a previous reference which had been had in the action.

The facts as to which there is no conflict are these:   The lands in question were originally a part of the lands of the Oneida tribe of Indians, one of the Six Nations. After the close of the Revolutionary War, numerous treaties were made between the State of New York and the Oneidas, by which certain of their lands were ceded to the State, and eventually, about 1840, the principal part of the Oneidas was moved to Wisconsin and established in reservation there, and from that time the Oneidas did not exist in the State of New York as an organized tribe.   At that time by a treaty entered into by the Oneida tribe and the State of New York the bulk of the lands then remaining of the Oneida Reservation was ceded by the tribe to the State of New York to be sold by the State and the proceeds paid over to the Indians by a method set up in the treaty.   The lands in question were a part of the lands so ceded to the State of New York.   However, a part of the Oneidas did not desire to be transported to Wisconsin, but wanted to remain in New York, and certain of the Indian lands were retained and by another treaty with the State of New York were either set apart in severalty to the Indians who remained or were sold and the proceeds paid over to them.   The details of that transaction are not material here, as the lands in question are not a part of those retained lands.   After the emigration, certain of the Oneida Indians remained in the State

of New York, but they were only sojourners and maintained no settled tribal relations in this State. The defendant Stella Miller is a descendant of some of those Oneida Indians who remained in the State, and so far as the proof shows is a full blood Oneida Indian. Her husband, Jacob Miller, however, is a white man, and an American citizen.

The lands in question, with other lands, were patented by the State of New York in 1851 to William French, a white man. French and his wife deeded the property June 11, 1852, to Polly Chris John, who was one of the Oneida Indians who had remained in New York State. Polly Chris John entered into possession of said land under said deed from French and remained in possession until her death intestate, leaving a daughter, Mary Doxtader, and a son, James Chris John, her only heirs and next of kin. In 1876 James Chris John deeded his interest in said lands to Mary Doxtader, and Mary Doxtader, under said deed and as heir at law of Polly Chris John, entered into possession of said lands. In 1907 Mary Doxtader deeded the lands in question to Lydia Doxtader, who was also an Oneida Indian, the daughter of Mary Doxtader. Lydia Doxtader, also known as Lydia Beechtree Doxtader, resided upon the premises in question until her death, the date of which does not appear in the evidence, but probably was in 1926. She left a last will and testament, bearing date January 8, 1926, which was admitted to probate in the Surrogate's Court of Oneida county on the 3d day of May, 1926, and letters testamentary thereunder were issued to Earl C. Goodenow, W. R. Virgil and John Vanderlan, the executors named therein. In this will it was provided: " It is my will and desire that my executors sell all my real and personal property and same be converted into cash." On September 30, 1926, Earl C. Goodenow and John Vanderlan, two of the said executors, as executors of the last will and testament of Lydia Beechtree Doxtader, executed and delivered to the plaintiff a deed conveying the premises in question and all the estate which the said testatrix had at the time of her decease therein. Plaintiff paid to the said executors the purchase price of said premises, and the said executors accounted for the same before the Surrogate's Court of Oneida county, and the same was distributed to those entitled thereto under the will of the said Lydia Beechtree Doxtader.

The defendant Stella Miller, who probably was some relation of Lydia Beechtree Doxtader, but just what the evidence does not disclose, went to the home of Lydia Doxtader January 27, 1926, and remained there caring for her in her last illness until she died. After the death of Lydia Doxtader, Stella Miller and her husband,

Jacob Miller, remained upon the premises, and after the deed to the plaintiff by the executors he demanded possession of the same, and they refused to surrender possession, and have remained in possession ever since.

This action is brought to obtain the possession of said premises for the plaintiff. Just what claim of right to remain in possession the defendants have is difficult to determine.

The ultimate question to be determined in this case is whether an Indian living on tribal lands, or living as a part of an organized tribe, can take and hold real estate in this State, can dispose of such real estate by deed or devise, and what law applies to such real estate of such Indian, in case of his death owning real estate. The questions arising here are very ably discussed in the opinion of Justice DAVIS in *Plummer* v. *Hubbard* (207 App. Div. 29), in which he says, among other things: " The status of the Indian nations or tribes in both the State and Nation, as has often been said, is anomalous. * * .* The New York Indians, known as the Six Nations, as a result of treaties both before and since the organization of the State government, sustain a relation toward this State and its government different from that sustained by other Indian tribes or nations toward other States. * * * Indians, though born within the United States, are not citizens thereof unless naturalized or made so by statute or treaty. * * * Nor are they citizens of this State. They are wards of the Nation and of the State. Whatever rights they have are regulated by treaty or statute."

As was pointed out in that opinion, the first legislative policy of this State toward the Indians was one of protection. By statute they were forbidden to alienate their lands or from making contracts in relation thereto, nor could they be sued upon any contract made by them.

In 1843 there was a change in policy, and chapter 87 of the Session Laws of that year provided: " Any native Indian may, after the passage of this act, purchase, take, hold and convey lands and real estate in this State, in the same manner as a citizen: and whenever he shall have become a freeholder, to the value of one hundred dollars, he shall be liable on contracts, and subject to taxation and to the civil jurisdiction of the courts of law and equity of this State, in the same manner and to the same extent as a citizen thereof." In 1892, when the Indian Law was adopted, the rights of Indians, in so far as the holding of lands and the right to contract, were liberalized. Section 2 of the Indian Law (Laws of 1892, chap. 679) provided: " An Indian shall be liable on his contracts not prohibited by law; and a native Indian may take, hold and convey real property the same as a citizen. Upon becoming a freeholder to the value of one hundred dollars he shall be subject to taxation." (Now Indian Law, § 2.)

The real estate in question here is not now a part of the tribal lands of the Oneida Nation or tribe of Indians. By the treaty of 1838 these lands with others were conveyed to the State of New York and at that time those lands ceased to be tribal Indian lands and the purchasers of such lands from the State acquired a lawful and valid title in fee simple absolute. (*Seneca Nation* v. *Christie*, 126 N. Y. 122; affd., 162 U. S. 283.) Nor was that condition changed by the fact that afterward, in 1852, these lands were conveyed to an Indian who was not then living as a member of an organized Indian tribe, for that transfer was made after the passage of the act of 1843, which permitted any native Indian to purchase, take, hold and convey lands and real estate in the same manner as a citizen. That power has existed in the law of this State from that time to this. That property, although held by an Indian, was subject to the laws of this State, and passed by deed, will and inheritance the same as any other real estate in the State. (*Hatch* v. *Luckman*, 155 App. Div. 765.) This has been held to apply even to the rights of the individual Indian in tribal lands which have been allotted to him in severalty, pursuant to statutes permitting such allotment. (*Terrance* v. *Gray*, 171 App. Div. 11; *Jimeson* v. *Pierce*, 78 id. 9; *Peters* v. *Tallchief*, 121 id. 309.)

It, therefore, appears that the plaintiff is the owner of the real estate in question and is entitled to the possession thereof. Judgment is, therefore, awarded to the plaintiff, with costs. Findings may be prepared and if not agreed upon may be settled on two days' notice.