OREN LYONS, Plaintiff, *v.* IVA BILLINGS LYONS and Others, Defendants.

Supreme Court, Onondaga County, December 9, 1933.

*Wilfred E. Hoffman* [*Edward Chapman* of counsel], for the plaintiff.

*Vincent K. Loughlin* [*Robert K. Murray* of counsel], for the defendants.

CREGG, J. The parties hereto are Onondaga Indians and reside on the Onondaga Indian reservation. The reservation is located about five miles south of Syracuse in the county of Onondaga, N. Y. The land in question is part of the reservation. Since the organization of the confederacy of the Six Nations of Indians, the Onondaga Nation has continued to be a member thereof and has ever since maintained all of the Indian tribal laws, customs, rules and regulations. About 700 Indians reside upon the reservation. The various Indians residing on the reservation have the right to possession of different parcels of land contained within the boundary of the reservation. The fee to the lands is either in the Indian nation or the State of New York but so far as this action is concerned it is immaterial.

The Indians residing on the reservation have the right to transfer the possession of such lands from one Indian to another during their lifetime, but they cannot transfer such possession to any member of the white race. No members of the white race can reside on the reservation at any time. Members of the white race may, with the approval of the Indian agent, lease certain of the Indian lands for periods not to exceed ten years.

The Onondaga Indians are divided into tribes or clans some twelve to fourteen in number. The business of the Onondaga Nation of Indians is carried on through the chiefs of the nation who consist of a chief and sub-chief from each of the different clans. The clans also have a clan mother who is really the president and dictator of the affairs of the clan. She has the right to name chiefs and preside at and dispose of a deceased Indian's property at what is known as the "Dead Feast."

Emmett Lyons on and prior to March 1, 1933, was a member of the Beaver clan of the Onondaga Nation of Indians and resided on the reservation. At the time of his death he was in possession of certain lands which are now the subject of this controversy. He was what is known to the white man as a pagan. He had

never been Christianized. Shortly prior to March 1, 1933, he made and executed a document which is termed his last will and testament. He died March 1, 1933. His alleged will was offered for probate in the Surrogate's Court of Onondaga county.

The will purports to bequeath the property in question to the defendant Iva Billings Lyons. The surrogate has held that his court has jurisdiction to probate the will. However, the will has not been probated.

According to the tribal laws, rules and regulations of the Onondaga Nation of Indians, the disposition of all of a deceased Indian's property is made by the clan mother of the decedent's clan at a "Dead Feast" held the tenth day after the death of the individual Indian. The "Dead Feast" for Emmett Lyons was regularly held by the Beaver clan on the reservation on the 10th day of March, 1933. During the regular conduct of the services at such "Dead Feast" Alec Klute was appointed spokesman by Elizabeth Homer, the clan mother of the Beaver clan, and at her direction he announced the disposition of decedent's property. Thereupon the possession of the property in question was duly and regularly given and transferred according to Indian tribal laws and customs to the plaintiff, Oren Lyons. He is a grandson of Emmett Lyons.

Iva Billings Lyons resided with Emmett Lyons on the property in question at the time of his death. After the "Dead Feast" demand was made by the plaintiff for possession of the property which was refused. Plaintiff's claim is that he is entitled to possession by reason of the title conferred upon him at the "Dead Feast." The defendant Iva Billings Lyons claims that she is entitled to possession of the property by reason of the terms of the above-mentioned will.

It is true that some of the Indians residing on the Onondaga reservation have heretofore disposed of their property by will, but that is the exception rather than the rule. The great preponderance of evidence, however, shows that in each of the cases where there was any question raised and the will was relied upon to dispose of decedent's property, it was always ratified and approved at the "Dead Feast." That in effect constituted a disposition of decedent's property at the "Dead Feast."

David Hill, principal witness for the defendants, testified that he drew the alleged will but knew it did not have any force or effect until and unless it was approved at the "Dead Feast." He claims, of course, that the will in question was approved at the "Dead Feast" but his own evidence does not sustain such contention.

The great preponderance of evidence shows that Elizabeth Homer was the duly constituted clan mother of the Beaver clan

on the date the " Dead Feast " was held and that she had authority to act as such. The evidence clearly shows that it is not necessary to have the proceedings taken at a " Dead Feast " approved by the chiefs of the reservation. Nevertheless, the chiefs of the reservation did approve the action taken at the " Dead Feast " and directed the removal of the defendants from the premises in question.

The Onondaga Nation of Indians never has taken any action or attempted to adopt any tribal law or custom providing for the disposition of a deceased Indian's property other than the ancient law and custom of the " Dead Feast." An attempt was made by David Hill to read the will in question at the " Dead Feast," but the evidence shows that whatever was done in that respect was done at ten o'clock in the morning and that the " Dead Feast " for the disposition of the property in question was not organized until two o'clock in the afternoon of that day. The evidence is clear and convincing that the clan mother took no part in the proceedings until two o'clock in the afternoon. Such attempted reading of the will by David Hill did not constitute a ratification thereof.

Some question was raised on the trial as to the jurisdiction of this court to settle disputes among Indians who reside upon the Onondaga reservation and to determine the title in or possessory right to the lands within the reservation. The Indians residing on the reservation are wards of the United States government. Congress has full authority to legislate for them within their reservation, and when the State of New York legislates in reference to their affairs its action is subject to the paramount authority of the Federal government. (*Mulkins* v. *Snow*, 232 N. Y. 47.)

The United States Supreme Court has time and again declared that first authority rests in the Federal government. (*Heckman* v. *United States*, 224 U. S. 413; *United States* v. *Waller*, 243 id. 452.)

Subdivision 24 of section 24 of the Federal Judicial Code (U. S. Code, tit. 28, § 41, subd. 24) provides in substance that Federal courts shall have original jurisdiction of all actions, suits and proceedings involving the rights of any persons in whole or in part of Indian blood or descent to any allotment of land under any law or treaty. The natural implication from the adoption of that provision is that it left a certain measure of control to be decided by the State courts in accordance with the tribal laws and customs.

Section 5 of the New York State Indian Law provides that: " Any demand or right of action, which is not conferred upon a peace-maker's court may be prosecuted and enforced in any court of the state, the same as if all the parties thereto were citizens."

There is no power in the chiefs or any one else on the reservation to put the plaintiff in possession of the property. There is not any Peacemaker's Court on the reservation.

Federal courts have generally held that where the Federal government has failed to take action relative to rights of tribal Indians to litigate questions between themselves, the Federal courts will not assume jurisdiction and State jurisdiction is recognized. ( *United States ex rel. Kennedy* v. *Tyler*, 269 U. S. 13.)

As early as 1849 the State of New York assumed governmental control of Indians residing within the State of New York. In the beginning of this proceeding all parties agreed that this court had jurisdiction except in so far as it was claimed the Surrogate's Court of Onondaga county had jurisdiction. There cannot be any doubt about the jurisdiction of this court at this time. ( *Terrance* v. *Gray*, 171 App. Div. 11.)

The property in question was rightfully disposed of at the " Dead Feast." ( *George* v. *Pierce*, 85 Misc. 105.)

If the traditions of the Six Nations of Indians are to be upheld, full faith and credit must be given to their tribal laws and customs. According to the tribal laws and customs of the Onondaga Nation of Indians, from time immemorial, the property of a deceased Indian residing on the reservation has always been disposed of at the " Dead Feast."

Some effort was made to show that an ante-nuptial contract was made between the decedent and the defendant Iva Billings Lyons, wherein and whereby he agreed to give her all his property in the event she came to live with him as his wife. The evidence is not sufficient to show that such a contract was made. If made, it was not in writing as required by subdivision 3 of section 31 of the Personal Property Law. It is not such a contract as is recognized by the tribal laws and customs of the Onondaga Nation of Indians. It did not constitute a transfer of the property in question during the lifetime of the decedent. Any such claim is inconsistent with the terms of the alleged will.

Findings may be prepared and judgment entered in favor of Oren Lyons and directing that he be placed in possession of the property in question and that the defendants and all others holding under them be removed therefrom.